STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v.
ARTHUR C. HOPSON, JR., DEFENDANT-APPELLANT.

Argued November 23, 1971—Decided December 20, 1971.

(1)

*Mr. Gerald T. Foley, Jr.,* Deputy Public Defender, argued the cause for appellant (*Mr. Stanley C. Van Ness,* Public Defender, attorney).

*Mr. Richard F. Thayer,* Assistant Prosecutor, argued the cause for respondent (*Mr. Joseph P. Lordi,* Essex County Prosecutor, attorney).

PER CURIAM.   The judgment of the Appellate Division is reversed for the reasons given by Judge Halpern in his dissenting opinion. (114 *N. J. Super.* 146, 148 (1971))

FRANCIS, J. (dissenting). I vote to affirm the sentence as modified by the majority opinion of the Appellate Division.

For a number of years the Legislature has shown increasing concern with the problem of use of narcotic drugs and the ever mounting traffic in such drugs. The original regulatory and penal statute on the subject has been amended or revised on several occasions since 1933 (*L.* 1933, *c.* 186), the last one being *L.* 1970, *c.* 226. For nearly 20 years the lawmakers steadfastly regarded illegal possession, use and sale of narcotics as such a serious assault upon the fabric of our society as to require imposition of prison terms within specified minimum and maximum limits on all persons convicted of such violations. *L.* 1951, *c.* 56.

The present defendant was indicted and convicted of illegal possession of narcotics in violation of *N. J. S. A.* 24:18:47(c)(1), (since repealed and replaced by *N. J.*

*S. A.* 24:21–20(a)(1)), which ordained that the punishment for him as a first offender "shall" be "a fine not exceeding $2,000.00 and by imprisonment with hard labor, for a term of not less than 2 years nor more than 15 years." The stern legislative mandate for compulsory incarceration remained unchanged until the last revision in 1970 (*L.* 1970, *c.* 226) when the mandatory minimum prison term was eliminated.[1] But *cf. N. J. S. A.* 2A:168–1.

I am satisfied beyond all doubt that the Legislature never intended at any time, prior to 1970 at least, to authorize the courts in their discretion to disregard the command for a mandatory minimum sentence for narcotics law violators, and instead to commit them to the New Jersey Reformatory for Males at Yardville Youth and Correction Center (now Youth Reception and Correction Center, Yardville, (*L.* 1970, *c.* 300)), for an indeterminate term its length to depend upon the will of the managers of that institution. We know that on an indeterminate sentence the prisoner may be released by the managers whenever in their judgment his response to the custodial treatment warrants it. *N. J. S. A.* 30:4–148; *In re Nicholson,* 69 *N. J. Super.* 230, 233, 237 (App. Div. 1961); *In re Zienowicz,* 12 *N. J. Super.* 563, 571, 574 (Cty. Ct. 1951). It is a matter of record that when at least one of the revisions of the narcotics law was under consideration, some of our experienced criminal trial judges testified before the appropriate committee of the Legislature in opposition to the mandatory sentence feature of the bill. It was their view, as it is mine, that eliminating the exercise of discretion of experienced judges in the matter of minimum sentences, and requiring them to impose fixed minimum terms is an unwise policy. Moreover, in 1950 a committee of county judges appointed by this Court to study sentencing procedures recommended (with the approval of Commissioner Sanford Bates and Deputy Commissioner F.

---

[1] As a consequence of this change, the question involved in this case will not arise in the future.

Lovell Bixby of the Department of Institutions and Agencies) that

> the sentencing Judge be empowered to direct that offenders under 30 years of age, although sentenced to State Prison under existing statutes, be committed to the institution at Bordentown for a minimum-maximum term. Such a sentence would be designed to fit those whose offense requires an indeterminate rather than an 'institutional' sentence, but who at the same time appear to have rehabilitative potentialities. At the same time, it would retain with the Commissioner of Institutions and Agencies the discretion of transferring the inmate to State Prison if he did not properly avail himself of the opportunities afforded him at Bordentown. *Report of New Jersey Supreme Court Committee of County Judges on Improvement of Sentencing and Probation Procedures* (1950), p. 9.

A somewhat similar ameliorative suggestion was made on September 10, 1951 by another Supreme Court Committee assigned to study the sentencing of narcotics violators. *Report, Incarceration and Treatment of Narcotics Violators* (1951), pp. 5–6. But the lawmakers, as a matter of public policy, disagreed with the judicial expressions, and directed the courts to impose the mandatory sentences which were set forth in *L.* 1951, *c.* 56. As a consequence, I regard it as clear that the Legislature intended judges to visit mandatory minimum prison terms upon convicted narcotics violators[2] rather than wholly indeterminate reformatory commit-

---

[2] It must be inferred in this case that the sentencing judge did not wish to impose or to have the defendant serve a maximum term of more than five years. If the judge intended to subject defendant to a greater maximum than five years it would have been necessary for him to so specify expressly in his sentence and commitment to Yardville. *N. J. S. A.* 30:4–148; and see *State v. Minter*, 55 *N. J. Super.* 562 (App. Div. 1959).

The legislative history of *N. J. S. A.* 30:4–148 has its origin in *L.* 1918, *c.* 147 § 317. That section provided that in sentencing to the reformatory the courts "shall not fix or limit the duration of [the] sentence, but the time" to be served could not "exceed the maximum term provided by law for the crime," and the term of such service might be terminated by the board of managers in accordance with its rules and regulations. Thus the length of the prisoner's stay rested in the discretion of the board of managers alone as controlled by its rules and regulations.

ments. And putting aside, as I think should be done, any possible argument that such a legislative directive trespasses upon inherent judicial prerogatives, and proceeding upon principles of comity between partners in our tripartite form of government, I believe we should consider ourselves bound by the mandate of the statute to impose a minimum two year sentence. In this connection I agree with the majority opinion of the Appellate Division that the three year minimum term fixed by the trial court should not be sustained. Any effort to reconcile the two statutes involved here, *i e., N. J. S. A.* 24:18–47(c)(1) and *N. J. S. A.* 30:4–148, in order to utilize the rehabilitative facilities of Yardville rather

*Laws* of 1919, *c* 96 § 317 amended the 1918 Act, adding the language:
> * * * In the case of a prisoner convicted of an offense punishable either by imprisonment in a penitentiary, workhouse or said reformatory, such term of imprisonment shall not in such case exceed three years, when sentenced to said reformatory for an indeterminate sentence. * * *

This section was repealed by *L.* 1930, *c.* 256, thus restoring it to the original 1918 form.

The next amendment occurred in 1951 and except for some minor changes, *L.* 1970, *c.* 300 § 5, brought *N. J. S. A.* 30:4–148 into its present form. *L.* 1951, *c.* 335 § 1. It added to the 1918 Act the provision that the time to be served in confinement or on parole by a person committed to Bordentown shall not exceed five years or the maximum term provided by law for the offense for which the prisoner was convicted if such maximum is less than five years. An additional proviso was included also, saying,
> * * * *provided, however*, that the court, in its discretion, for good cause shown, may impose a sentence greater than five years, but in no case greater than the maximum provided by law, and the commitment shall specify in every case the maximum of the sentence so imposed.

This proviso was inserted just above the following sentence the substance of which originally appeared in the 1918 Act:
> The term may be terminated by the board of managers in accordance with its rules and regulations formally adopted.

Thus, courts became empowered to impose a maximum term in excess of five years on sentences of confinement to the male reformatory at Bordentown. However, such sentences were to be subject to the parole power of the board of managers, just as minimum and maximum sentences to State Prison are subject to the parole authority of the Parole Board.

than the more punitive ones of State Prison, ought to seek effectuation of the policies of both enactments with the least possible seeming trespass upon the overall policy of each of them. That result can be accomplished here by giving recognition to the legislative mandate for a two year minimum sentence regardless of where it is to be served, and at the same time accepting the legislative will that the maximum term to be served should rest in the discretion of the Yardville board of managers. This view accords with that of Judge Gaulkin and Judge Kilkenny for the Appellate Division in *State v. Ammirata,* 104 *N. J. Super.* 304 (1969), and *State v. Pallitto,* 107 *N. J. Super.* 96 (1969), *cert. den.* 55 *N. J.* 309 (1970), respectively, and I regard those decisions as eminently sound.

---

The 1951 amendment followed the 1950 *Report* of this Court's committee on improving sentencing procedures, *supra,* pp. 5–10, which pointed out a serious deficiency in the existing indeterminate sentence. For example, if prior to 1951 two young men, one 20 and the other 31 years of age, were convicted of a joint robbery, and the younger was given an indeterminate term at Bordentown Reformatory, and the older a two to five year minimum-maximum sentence to State Prison, the following would have been the consequence: The younger man would have been imprisoned for such period as the board of managers decided was necessary in his case, but if released before expiration of the authorized maximum term for robbery, *i. e.,* 15 years, *N. J. S. A.* 2A:141–1, he would have been subject to parole supervision for the remainder of the maximum term. But the older prisoner, and perhaps the more culpable, would discharge his imprisonment and parole obligation in a maximum of five years. This inequity led to the Committee suggestion that *N. J. S. A.* 30:4–148 be amended to provide that the maximum term to be served under an indeterminate sentence be limited to five years or the maximum provided by law for the crime involved, if less than five years, unless the court in its discretion specified a longer term up to the maximum provided for the crime, if greater than five years. 1950 *Report, supra,* p. 10, Appendix "B."

As a consequence of the 1951 amendment the judge here could have sentenced Hopson to Bordentown for a maximum term up to 15 years, if he saw fit to do so under the circumstances of the case. *N. J. S. A.* 24:18–47. If, however, he intended to do so, it would have been necessary to specify in the sentence and commitment the maximum decided upon. Not having done so, it must be assumed that he was satisfied with the maximum limitation of five years applicable under the 1951 amendment. *N. J. S. A.* 30:4–148.

Accordingly, I hold the view that the majority opinion of the Appellate Division in treating the mandatory sentence provisions of the narcotics act, *N. J. S. A.* 24:18–47(c)(1), and the reformatory confinement act, *N. J. S. A.* 30:4–148, as *in pari materia,* reached a reasonable and acceptable accommodation between the two statutes.[3]

Justice HALL joins in this dissent.

*For reversal*—Chief Justice WEINTRAUB and Justices JACOBS, PROCTOR, SCHETTINO and MOUNTAIN—5.

*For affirmance*—FRANCIS and HALL, J.J.—2.

---

[3]It may be noted that *N. J. S. A.* 30:4–85 authorizes the Commissioner of Institutions and Agencies, to transfer "any inmate of any correctional institution * * * to any other such correctional institutional institution," (such as Yardville, see *N. J. S. A.* 30:1–7). The 1949 *Report* (referred to above) of this Court's committee on improvement of sentencing procedures in the statement appended to the proposed amendment of *N. J. S. A.* 30:4–148 said:

"Under our present legislation where a minimum and maximum term to the Reformatory at *Bordentown* is indicated the sentence in the first instance is to State Prison and the inmate then transferred to Bordentown in the discretion of the Commissioner of the Department of Institutions and Agencies. This practice has proved satisfactory." *Report*, p. 18, Appendix #2.

There do not seem to be any reported cases discussing such a practice. However, accepting the statement in the *Report* as factual, the practice represents another method of accommodating the two statutes involved in this case.