127 N.J. Super. 399 (1974)
317 A.2d 727
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
EDDIE McBRIDE, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted February 19, 1974.
Decided March 27, 1974.
*400 Before Judges CONFORD, MEANOR and BOTTER.
Mr. Stanley C. VanNess, Public Defender, attorney for appellant (Mr. William E. Norris, Assistant Deputy Public Defender, on the brief).
*401 Mr. George F. Kugler, Jr., Attorney General, attorney for respondent (Mr. John DiCicco, Deputy Attorney General, on the brief).
BOTTER, J.S.C., Temporarily Assigned.
Appellant McBride pleaded guilty to three separate armed robberies committed on the night of November 12, 1972, and was sentenced to three concurrent terms of 15 to 22 years. A fourth indictment charging possession on the same date of a revolver, without a permit, was dismissed. This dismissal, as well as the concurrent running of the terms, accorded with the recommendation promised by the prosecutor when the guilty pleas were entered. On this appeal McBride asserts that the sentence is excessive.
When the crimes were committed McBride was 18 1/2 years of age. On the evening in question he met two of his cousins, Willie Spinks, age 18, and James Brown, age 17, and a friend named Anthony Thomas, age 18, and the three agreed to "pull a job" with McBride. Around 7:30 P.M. they drove to Neptune and robbed a gas station attendant of $30 at gun point, McBride holding his loaded.22 revolver and Spinks an automatic handgun. Thereafter they drove to Bradley Beach where McBride, Spinks and Thomas entered a Cumberland Farms store. There McBride and Thomas each pulled out the handguns and the register was emptied of $70. Later, around 10:15 P.M. in Red Bank they robbed another Cumberland Farms store of $25, with McBride holding the gun and Spinks waiting in the car. From there they drove to a diner where their car was identified and all were apprehended.
Of the four only McBride cooperated with the police, waived his rights and signed detailed confessions as to each robbery. Thereafter, McBride, Spinks and Brown pleaded guilty. Spinks also pleaded guilty to a robbery of a liquor store in Neptune, committed six days earlier, on November 6. Spinks was sentenced to four concurrent sentences of 15 to 25 years in State Prison. An indictment charging unlawful *402 possession of a firearm was also dismissed, all in accordance with recommendations agreed to be made by the prosecutor.
Spinks appealed from his sentence and the Appellate Division ordered a reduction to a minimum of 10 and a maximum of 15 years in State Prison. A review of that sentence on certification by the Supreme Court is now pending. In reducing the sentence this court noted that Spinks was 18 when the crimes were committed, that he had no prior criminal record, that no one was injured during the robberies, and that prison authorities had transferred him to the Youth Reception and Correction Center at Yardville.
On this appeal McBride argues that these were his first nonjuvenile convictions, that for his three robberies he should not be sentenced to a longer term than Spinks for his four, that he cooperated with authorities, that his intelligence, achievement ability and employment prognosis were poor, and that the trial judge said that the purpose of the sentence was "punitive," ignoring rehabilitative purposes.
We agree that the three concurrent terms of 15 to 22 years in State Prison for this one night's spree of three armed robberies is excessive, serious as the crimes were. Defendant's age and immaturity, including his cooperation with the police, and his pleas of guilty, deserve consideration. Against him is the fact that he held a gun in each robbery, as well as his juvenile record. This consists of two breaking, entry and larceny convictions and one shoplifting conviction at age 13, one breaking and entering conviction at age 14, and a charge of threatening to shoot a dog at age 16 while on parole. He has been on probation, spent time in the State Home for Boys, from which he was paroled on August 15, 1969, and left school in May 1970 while in the 9th grade. Since then he has worked for six months in 1971 at a Howard Johnson's Restaurant and one month in the summer of 1972 at a plastics company. He states he has used marijuana but no other drugs.
*403 We consider juvenile offenses for purposes of sentence, without equating them to adult crimes. Similarly, McBride's poor work record is to be evaluated in the light of his limited employment opportunity, due to his level of education and lack of skills. But we note, also, charges of misconduct resulting in disciplinary action even in his school record.
Evaluating McBride for sentencing, independent of the sentence imposed on Spinks, we consider appropriate a concurrent sentence of not less than 7 years nor more than 12 in the New Jersey State Prison for each armed robbery conviction, with a recommendation for evaluation of appellant for transfer to a youth correctional institution. (This sentence is composed of 4 to 7 years for each robbery, plus 3 to 5 years while armed, consecutively, or a total of 7 to 12.) Credit for time served on these charges before and after conviction shall be allowed. The consideration normally due to the sentence imposed by the trial judge is diminished by his sole statement as to the purpose of the sentence, namely, that it is "punitive." The principal purposes should be rehabilitation as well as deterrence, especially when dealing with a youthful offender.
For purposes of rehabilitation it is preferred that an 18-year-old offender be sentenced to the Youth Reception and Correction Center, Yardville.[1]State v. Horton, 45 N.J. Super. 44 (App. Div. 1957). Here the choice is between State Prison, where the court is assured of a minimum period of incarceration, which may be less than one-third of the maximum sentence, after credits for time served and commutation *404 time for good behavior and work performed, N.J.S.A. 30:4-123.10, 30:4-140 and 30:4-92, and a sentence to Yardville with a possible increase in the maximum imposed, N.J.S.A. 30:4-148. A "Yardville" sentence remains, nevertheless, an indeterminate sentence with prison authorities alone determining the release date. N.J.S.A. 30:4-148, 30:4-106, 30:4-1.1(n); State v. Hopson, 60 N.J. 1, 3 (1971), (Francis, J. dissenting); In re Nicholson, 69 N.J. Super. 230, 233 (App. Div. 1961). The conflict is between assuring the most appropriate place of incarceration, considering the rehabilitative needs of the offender, and assuring a minimum period of incarceration for deterrent purposes. In taking the latter course we have in mind the power of the authorities to transfer appellant to a youth correctional institution, if appropriate. N.J.S.A. 30:4-85, N.J.S.A. 30:4-91.1 et seq. Thus, we defer to the discretion of the prison authorities to make the most desirable assignment of appellant, while imposing a sentence that assures a period of incarceration which we deem best suited to the protection of society.
While we are most sympathetic with the rehabilitative aspirations which motivate Judge Conford's dissenting opinion, the differences in the majority and minority views highlight a serious shortcoming in the sentencing process. This is the lack of coordination and communication between sentencing judges and the administrators of penal institutions. This gap forces judges, as a practical matter, to hope that a prisoner will be sent to the right place and held for an appropriate period of time. But experience, which comes more from rumor than data, suggests that some youthful offenders who commit armed robberies are released from an indeterterminate sentence in shockingly short periods of time, possibly because of space problems and not because prison authorities are certain that the purposes of rehabilitation and protection of the public have been served. Hence the choice here is made to assure the minimum time which we think is necessary to accomplish these ends, with the hope that prison *405 officials will transfer this defendant to the most appropriate institution while he serves that time.
The sentences imposed below are vacated and the matter is remanded to the trial court for imposition of sentences in accordance with this opinion.
CONFORD, P.J.A.D. (dissenting).
While I agree with the majority that the sentence was manifestly excessive and the "punitive" purpose pronounced by the sentencing judge too restrictive an approach to this particular offender, I am of the view that a proper assessment of the crime, the offender and the purposes of sentencing should lead to an indeterminate sentence of this defendant to the Youth Correctional Institution Complex, N.J.S.A. 30:4-147. I would recommend the Yardville Center for this purpose and fix a maximum term of ten years. N.J.S.A. 30:4-148.
This was an 18-year-old first-time adult-offender with a relatively insignificant juvenile record  a product of a typically disadvantaged milieu in our society. He gave a full statement to the police immediately upon apprehension and pleaded guilty. Without in any way disparaging the serious nature of the one-night criminal spree here involved, this defendant is in peculiar and particular need of application of our long-since settled public policy in favor of the rehabilitative goal in the correction and punishment of youthful offenders. See State v. Ward, 57 N.J. 75, 82 (1970); State v. Hopson, 114 N.J. Super. 146, 151 (App. Div. 1971) (dissenting opinion), rev'd on the dissent in 60 N.J. 1 (1971).
The statutory policy for the selective treatment of youthful offenders by indeterminate terms of confinement, with the potential of early release in appropriate cases, and in facilities conducive toward reform and rehabilitation, has been in effect in this State for over three-quarters of a century. See State v. Hopson, supra, 114 N.J. Super. at 151; State v. Horton, 45 N.J. Super. 44, 47-48 (App. Div. 1957). While not all authorities agree with the indeterminate confinement *406 aspect of the approach,[1] the desirability of physical surroundings and rehabilitative programs conducive toward the reclamation for society of the young offender is a matter of universal accord. See A.B.A. "Standards Relating To Sentencing Alternatives and Procedures," § 2.6 at 110 et seq. (1968); Rubin, The Law of Criminal Correction 272 (1963); cf. McCorkle, Elias and Bixby, The Highfields Story (1958), passim; Beck, Five States. A Study of the Youth Authority Program as Promulgated by the American Law Institute, pp. 1-4 (1951).
Yardville is an institution which offers this State's best present hope for correction of an offender like McBride. At the time of sentencing on March 2, 1973 he was at the potential turning point of the road toward social reclamation rather than that of hardening into likely recidivism. Hopefully, the year of confinement in State Prison to date has not yet cast the balance irremediably in the latter direction. Like it or not, protracted confinement in State Prison has ominous portent for the rehabilitative prospects of a malleable 18-year-old initiate to that institution. See State v. Horton, supra, 45 N.J. Super. at 47. The retrogressive nature of this facility has been a matter of repeated public notice in the recent past.
The issue between the majority and myself seems to devolve upon their view that it is essential "to the protection of society" to absolutely assure several years of incarceration of this defendant. But the recommendation they voice that he be transferred to a youth correctional institution does not assure that he will be. He has been in State Prison since sentencing, and if he remains there for the potential statutory minimum under the imposed 12-year maximum before he can be paroled he may well be lost insofar as the chance for rehabilitation is concerned. Since the latter is my preferred *407 objective in this case, I would be willing to take the chance that the institutional authorities would not release defendant from the Center until the passage of such a period of time as would appear to comport both with the protection of society and defendant's prospects for salvation.
I appreciate that this dissent differs from the judgment I voted for in the appeal of Spinks, a codefendant. Reflection since that time satisfies me that we erred in not remanding Spinks for an indeterminate sentence to Yardville  his essential situation paralleling that of McBride in most material aspects, particularly those of offense, age and first-offender status. Fortunately, however, he was transferred there by administrative order.
NOTES
[1] Technically, in sentencing a youthful offender to a "reformatory," the sentence should be to the Youth Correctional Institution Complex, for an indeterminate term, with instructions that defendant be delivered directly to the Youth Reception and Correction Center at Yardville. See N.J.S.A. 30:4-148. The Complex is composed of the Youth Correctional Centers at Yardville, Bordentown and Annandale, as well as other facilities, N.J.S.A. 30:4-146. The sentencing judge may recommend, if he wishes, that the defendant be held at Yardville, although the disposition is at the discretion of the penal authorities.
[1] See Frankel, Criminal Sentences at 86 et seq. (1973); Coburn, "Disparity in Sentences and Appellate Review of Sentencing," 25 Rutgers L. Rev. 207, 211, fn. 19 (1971).