139 N.J. Super. 58 (1976)
352 A.2d 587
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
EARL ROBINSON, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued December 16, 1975.
Decided January 30, 1976.
*60 Before Judges MATTHEWS, LORA and MORGAN.
Mr. Michael R. Klekman, Assistant Deputy Public Defender, argued the cause for appellant (Mr. Stanley C. Van Ness, Public Defender, attorney).
Mr. William Welaj, Deputy Attorney General, argued the cause for respondent (Mr. William F. Hyland, Attorney General of New Jersey, attorney).
PER CURIAM.
Defendant was convicted of first degree murder of Juan Cadiz, a bartender at the U & I Bar in Trenton, during an armed robbery and was sentenced to life imprisonment at the New Jersey State Prison.
He contends that (1) the admission of rebuttal testimony of William Soost, an investigator with the office of the Public Defender regarding conversations he had with certain individuals about their becoming alibi witnesses, and the prosecutor's comments thereon, violated the hearsay rule and defendant's right to confrontation of witnesses; (2) the *61 trial judge committed plain error in failing to instruct the jury on the factors to consider in weighing identification testimony; (3) the prosecutor's comments in summation implying that the trial judge had already found the pretrial identification procedures employed by the police not to be suggestive constituted plain error; (4) the prosecutor deprived defendant of a fair trial when he introduced the issue of defendant's poverty into the case; (5) the trial judge erred in failing to specifically instruct the jury that in considering the statements allegedly made by the defendant to the police, they should first decide whether he made such statements; (6) the prosecutor misrepresented Detective Di Natale's testimony, to defendant's prejudice in asking defendant whether he remembered hearing the detective testify that the police had talked to James Austell and he could not corroborate defendant's alibi; (7) the pretrial photographic and lineup identifications of defendant by the witnesses Santiago, Molina and Figueroa were impermissibly suggestive; (8) the totality of the errors was so prejudicial as to deny defendant a fair trial, and (9) the trial judge erred in sentencing defendant without a presentence report, and such error was not harmless even though defendant was convicted of first degree murder since the trial judge had the power to sentence defendant to the Youth Complex for an indeterminate term with a maximum of life and, if not, the failure to order a presentence report was nevertheless prejudicial to the defendant.
On rebuttal the State called William Soost who had investigated the case for the Public Defender. He testified that, after talking to defendant, he spoke to Billie Shore, Shirley McClain, Scoop Thompson and Alfred Council. Defendant's objection to a question as to what Soost had concluded about these individuals becoming alibi witnesses, was sustained. In response to the prosecutor's question as to how many names were supplied to the State as alibi witnesses, he stated that only the name of James Austell was so supplied. He further testified that the names of these four *62 persons were not supplied as alibi witnesses, defense counsel interjecting that they all had been listed as possible witnesses when the trial started. The prosecutor thereafter in his summation alluded to this testimony:
Soost went out and he talked to these people. He advised both Shorter and McClain; look, we represent Earl Robinson, Earl Robinson is charged with a murder committed in the U & I Bar on the 31st. That's what he told us he told them. We need alibi witnesses. I asked him when you submitted report, and when you finally talked to all these people on the 23rd, what was the conclusion that you had come to with respect to whether any of the people you had talked to could provide an alibi. The answer was they could not, they could not then.
Defendant, citing State v. Bankston, 63 N.J. 263, 271 (1973), asserts that this testimony constituted inadmissible hearsay (Evid. R. 63) and as such violated his right to confrontation; that although Soost did not testify as to what these persons had actually said to him, there was an inescapable inference they had told him that defendant was not with them between 9:30 and 10:00 on the night of the murder, thus undermining, if not destroying, his alibi.
Aside from the question of the propriety of the State calling an investigator for defendant to testify to the results of an investigation made on defendant's behalf, Soost's testimony was inadmissible hearsay and carried an implication that the out-of-court witnesses had given information unfavorable to defendant, said implication being further emphasized by the prosecutor's comment.
However, we have reviewed the entire record and are convinced the error was clearly not capable of bringing about an unjust result. R. 2:10-2; State v. Macon, 57 N.J. 325 (1971). Defendant was positively identified by three eyewitnesses to the crime. Moreover, none of defendant's alibi witnesses could testify that they saw him on July 31 between 9:30 and 10 p.m.
On cross-examination of Ms. Troy Ames, the prosecutor, over defendant's objection, asked her whether she was supporting *63 the defendant. The State argued that the fact of Troy Ames supporting the defendant conflicted with defendant's anticipated testimony that on the evening of July 31 he obtained some food from a Reverend Nelson which he gave to another woman. On the basis of this representation the trial judge allowed the question. Ms. Ames then testified that defendant once during the two weeks he had been living with her gave her ten dollars for her child's support, but that other than that occasion she bought the food and supplied the money in the household.
Subsequently, while cross-examining Reverend Nelson about whether defendant had visited him to inquire about better job possibilities, the prosecutor asked if defendant "was, in effect, panhandling?" Defendant's objection was immediately sustained. Finally, when the prosecutor called Soost as a rebuttal witness, he elicited from Soost that he was a senior investigator with the Office of the Public Defender, assigned to the defendant's case. However, when Soost was originally called by defendant, defense counsel himself elicited from him that identical information.
Defendant contends that in these three instances, the prosecutor improperly introduced evidence of defendant's poverty to show a tendency, or motive, to commit a crime for financial gain. State v. Mathis, 47 N.J. 455 (1966). Mindful as we are of the philosophy of Mathis, supra at 472, and its interdiction against the projection before the jury of the "forbidden theme that defendant had no apparent means of income and hence was likely to commit a crime for dollar gain," we are nevertheless convinced that in light of the facts of this case the references to defendant's impecuniosity played no part in the jury's determination of defendant's guilt, State v. Copeland, 94 N.J. Super. 196 (App. Div. 1967), and that such error was incapable of producing an unjust result.
Consideration of defendant's remaining contentions leads us to conclude they are without merit and that defendant's conviction of first degree murder should be affirmed.
*64 Defendant was sentenced to life imprisonment at State Prison after his counsel's request for a presentence report was denied. He contends the trial judge erred in sentencing him without a presentence report, to his prejudice, in that the judge had the power to sentence him to the Youth Complex for an indeterminate term with a maximum of life and that a presentence report would have indicated his eligibility for such sentence.
R. 3:21-2 provides that before the imposition of sentence the probation service of the court "shall make a presentence investigation and report to the court." It further provides that if a custodial sentence is imposed, the probation service of the court shall, within ten days thereafter, transmit a copy of the presentence report to the person in charge of the institution to which the defendant is committed.
State v. Hopson, 60 N.J. 1 (1971), and State v. Brozi, 125 N.J. Super. 485 (App. Div. 1973), certif. den., 64 N.J. 501 (1974), which dealt with conflicts between N.J.S.A. 30:4-148 and statutes concerning possession of narcotics and kidnapping respectively, are cited by defendant as dispositive of the question whether an otherwise qualified defendant who has been found guilty of first degree murder may be sentenced to the Youth Complex for an indeterminate term with a maximum of life.
In Brozi the court found that the absence of an exception for kidnapping from the no-minimum rule of N.J.S.A. 30:4-148 indicated a legislative intent not to exclude persons convicted of kidnapping from being sentenced to the reformatory, 125 N.J. Super. at 488-489, notwithstanding the kidnapping statute, N.J.S.A. 2A:118-1, mandated a minimum term of 30 years. Similarly, in Hopson it was held that a defendant convicted of possession of narcotics could be committed to an indeterminate term at the Youth Complex notwithstanding N.J.S.A. 24:18-47(c) which mandates a term of not less than two nor more than 15 years in light of the Legislature's not excepting such offense from the comprehension of N.J.S.A. 30:4-148 which provides *65 that the courts shall not fix or limit the duration of sentence in sentencing to the reformatory.
However, N.J.S.A. 2A:113-4 provides for a mandatory life sentence for first degree murder. State v. Funicello, 60 N.J. 60, 68, cert. den., 408 U.S. 942, 92 S.Ct. 2849, 33 L.Ed. 2d 766 (1972). That sentence is imposed by the jury once it has determined defendant guilty of murder in the first degree. No minimum or maximum is provided for, thus distinguishing the first degree murder statute from the statutes involved in Hopson and Brozi. When the Legislature fixes a single or mandatory penalty for a crime the courts have no alternative but to pronounce the prescribed sentence. It is only when the Legislature has provided for minimum and maximum terms that courts have discretion as to the sentence to be imposed. State v. Hubbard, 123 N.J. Super. 345, 351 (App. Div. 1973), certif. den. 63 N.J. 325 (1973). Accordingly, we are of the view that extension of the philosophy of reformatory sentencing for rehabilitative purposes in first degree murder cases is for the Legislature and not the courts.
Then too, we note that youthful offenders who have been sentenced to State Prison can be administratively transferred to the Youth Complex to serve their prison sentence, N.J.S.A. 30:4-85; N.J.S.A. 30:4-91.1 et seq.; State v. Spinks, 66 N.J. 568, 575 (1975), thus affording them the rehabilitative environment contemplated by N.J.S.A. 30:4-148 while not contravening the mandate of N.J.S.A. 2A:113-4.
Having concluded that the trial judge was without authority to commit defendant to the Youth Complex, there was no need for a presentence report prior to sentencing, the trial judge having no alternative but to pronounce the prescribed, mandatory sentence of life imprisonment. Cf. State v. Hubbard, supra; In re Ernst, 37 N.J. 24 (1962), cert. den., 370 U.S. 959, 82 S.Ct. 1612, 8 L.Ed.2d 825 (1962). However, if the probation service of the court has not already done so, a background report on defendant should be prepared so that a copy thereof may be transmitted to the person *66 in charge of the institution to which defendant was committed in accordance with R. 3:21-2.
Affirmed.