STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v.
HORACE KNIGHT, DEFENDANT-APPELLANT.

Argued October 26, 1976—Decided December 17, 1976.

Ms. *Cynthia M. Jacob,* Designated Counsel, argued the cause for appellant (*Mr. Stanley C. Van Ness,* Public Defender, attorney; *Mr. William E. Norris,* Assistant Deputy Public Defender, of counsel and on the brief).

Ms. *Marianne Espinosa,* Deputy Attorney General, argued the cause for respondent (*Mr. William F. Hyland,* Attorney General of New Jersey, attorney; *Mr. Richard J. Engelhardt,* Deputy Attorney General, of counsel and on the brief).

PER CURIAM. ▉ This appeal, brought here by virtue of a dissent in the Appellate Division, *R.* 2:2–1(a)(2), raises only the question of the propriety of sentences of the defendant to State Prison on narcotics distribution and possession charges for aggregate terms of 5–7 years. The dispute in the Appellate Division was as to whether defendant, a 22 year old heroin addict never previously incarcerated, should more appropriately have been sentenced to the Youth Correctional Institution Complex (Yardville), for which he was eligible, than to State Prison.

We affirm the judgment of the Appellate Division for the reasons set forth in its opinion, 146 *N. J. Super.* 231, *A.* 2d (1975), supplemented by the following comments.

▉ There is a wide area of discretion in the sentencing judge, and the sentence in the present instance might well, for the reasons set forth in Judge Botter's dissenting opinion, have been appropriately made to Yardville. But sentence review in this State is by no means a *de novo* exercise of the

sentencing function by the appellate court. Only where the sentence is "manifestly excessive" should it be revised on appeal. *State v. Bess,* 53 *N. J.* 10, 18 (1968). By the same token, the choice of institution of incarceration by the sentencing judge should not be disturbed on appeal unless manifestly inappropriate or unsuited to the corrective purposes indicated by an appraisal of both the offender and the offense. See *State v. Spinks,* 66 *N. J.* 568, 575–576 (1975); *State v. McBride,* 66 *N. J.* 577, 580 (1975). The seriousness of two of the instant offenses — distribution of heroin — of itself would repel any notion of *manifest* inappropriateness of a sentence to State Prison therefor.

We note that although sentencing here took place prior to our decision in *State v. McBride, supra,* the sentencing judge in his written reasons for sentence met the spirit of the direction therein that all sentences of youthful offenders eligible for Yardville be to that institution or that the reasons for sentencing indicate why not, and why the sentence to State Prison is deemed more appropriate. 66 *N. J.* at 580–581.

Judgment affirmed.

PASHMAN, J. (dissenting). This case requires the Court to again consider the application of guidelines which it has endorsed for sentencing youthful offenders. I do not believe that the result reached today, or the analysis which the majority employs, will aid future trial judges faced with the problem of deciding whether to sentence an eligible defendant to the Youth Correctional Institution Complex (Yardville). Though I recognize the difficulty which sentencing entails, particularly where a young person is involved, the importance of rehabilitation leads me to believe that the sentence imposed in this case was excessive. I regard the trial judge's reasons for rejecting an indeterminate sentence at Yardville as inadequate and would reverse the Appellate Division and remand the case for resentencing in accordance with Judge Botter's dissent.

This Court considered the problems inherent in sentencing youthful offenders in *State v. McBride*, 66 *N. J.* 577 (1975). There Justice Sullivan wrote for a unanimous Court:

Under *N. J. S. A.* 30:4–147 any male between the age of 15 and 30 years who has been convicted of a crime punishable by imprisonment in the State Prison, who has not previously been sentenced to a State Prison in this or any other state, may be committed to the Youth Correctional Institution Complex. *The advantages, for rehabilitative purposes, of sentencing to this Complex are compelling* and have been outlined in the dissenting opinion of Judge Conford. *A youthful offender eligible for sentence to the Complex should ordinarily be sentenced there unless good and substantial reasons exist for not so doing. The policy of the law is to reform the youthful offender. Sentencing judges should direct the punishments they impose to the goal of reformation.*

[66 *N. J.* at 580; emphasis added.]

Though we upheld a reduced sentence to State Prison in that case, Justice Sullivan's words clearly apply to the type of defendant currently before the Court.

The present defendant is a heroin addict. Unlike the defendant in *State v. McBride, supra,* he is not charged with three armed robberies, or any other crime of violence. Rather, the charges of possession and sale of heroin are the result of his attempt to support his narcotics habit. The conviction involved the unlawful possession and sale of $40 worth of heroin on two separate occasions and the possession of twenty "nickel bags" of marijuana found in his home. Moreover, the defendant's record does not support the trial judge's implied conclusion that he is beyond rehabilitation. The presentence report indicates that the defendant was 22 years of age prior to sentencing. At age 16, he was placed on one year's probation for eluding a police officer. In 1973, he was placed on probation again for possession of heroin and receiving a stolen check. His failure to report to his probation officer led to further difficulty with officials, and currently he has failed to provide court ordered support payments for a child born out of wedlock. Though this his-

tory does support some type of confinement, the five to seven year sentence at State Prison, with a concurrent three to five year sentence for the marijuana charge, is excessive and reduces the possibility of reforming the defendant.

Consistent with the rehabilitative goals which he underscored in *State v. McBride, supra,* Justice Sullivan in that case outlined a procedure designed to ensure that the sentencing judge would carefully consider the possibility of rehabilitation when sentencing an individual. There we required that "a judge, who imposes a State Prison sentence on an offender who is eligible for sentence to the Youth Complex, state the reasons for not sentencing the offender to the Youth Complex and why the sentence to State Prison is more appropriate." 66 *N. J.* at 581. *See also, R.* 3:21–4(e). The trial judge's reasons for sentencing the defendant to State Prison in this case were as follows:

The distribution of [a controlled dangerous substance] is too serious to warrant any penalty less than a period of incarceration. Moreover, this defendant, though placed on probation in 1972 on conviction of possession of narcotics, has totally failed to cooperate in any way with the Probation Department. He is in serious arrears under a Court order for support of an illegitimate child.

I cannot believe that these reasons satisfy the rule announced in *McBride, supra*. Nowhere did the trial judge indicate that the defendant was *incapable* of being rehabilitated, or why an indeterminate sentence at Yardville would have been inappropriate for this particular individual; the reference to the defendant's probation experience appears to have been primarily an attempt to bolster the conclusion that heroin offenders should be incarcerated in state prison.

The approach taken by the trial court and followed by the majority today overstates the appropriate emphasis on the nature of the charges, and neglects to consider whether or not the defendant is capable of being rehabilitated. The Court concludes that "[t]he seriousness of two of the instant offenses

— distribution of heroin — *of itself* would repel any notion of *manifest* inappropriateness of a sentence to State Prison." *Ante* at 195 (emphasis added). Not only is the majority's approach contrary to the stated principles in *McBride,* but it contravenes public policy. *See State v. Ward,* 57 *N. J.* 75, 82 (1970) (" . . . it remains the policy of the law to reform the youthful offender. Sentencing judges should direct the punishments they impose to the goal of reformation. Too severe a punishment will do little towards advancing this goal.").

Judge Conford's dissenting opinion in the Appellate Division in *McBride* highlights the advantages in sentencing youthful offenders to Yardville:

> The statutory policy for the selective treatment of youthful offenders by indeterminant terms of confinement, with the potential of early release in appropriate cases, and in facilities conducive toward reform and rehabilitation, has been in effect in this State for over three-quarters of a century. * * * While not all authorities agree with the indeterminate confinement aspect of the approach, *the desirability of physical surroundings and rehabilitative programs conducive toward the reclamation for society of the young offender is a matter of universal accord.*
> [127 *N. J. Super.* 399, 405–406; emphasis added; footnote omitted.]

Even though this Court in *McBride* characterized Judge Conford's reasons for favoring Yardville as "compelling" and declared that "[t]he policy of the law is to reform the youthful offender," 66 *N. J.* at 580, the majority offers no reason for suddenly departing from its stated policy favoring rehabilitative treatment.

More importantly, the majority fails to discuss the impact that its *per se* rule, which focuses primarily on the nature of the crime, will have on society once the defendant is released from prison. Similar to Judge Conford's characterization of the defendant in *McBride,* I regard this defendant as being "at the potential turning point of the road toward social reclamation." 127 *N. J. Super.* at 406 (Conford, J.,

dissenting). Yet, he has been in jail since his arrest on June 5, 1974, and his eligibility for parole in February 1977 makes the need for rehabilitative treatment critical. I cannot believe that the defendant's experiences in State Prison will be of any help in enabling him to contribute to the society to which he must return, or in coping with his drug problems.

Finally, the majority correctly notes that the trial court's sentence should not be disturbed by this Court "unless manifestly inappropriate or unsuited to the corrective purposes indicated by an appraisal of both the offender and the offense." That standard does not render this Court powerless to correct sentencing abuses or require trial judges to consider the rehabilitative needs of defendants consistent with *R.* 3:21-4(e). In *State v. Bess,* 53 *N. J.* 10 (1968) this Court noted that "[i]t is settled in this State that an appellate court has the power to review any exercise of the trial court's discretion, including the power to revise a prison sentence where it is manifestly excessive, even though within statutory limits." 53 *N. J.* at 18. Moreover, that standard hardly implies, as the majority would conclude, that a heroin offense automatically should preclude meaningful judicial review of the lower court's sentence. We have rejected the notion that a conviction on a heroin charge makes a defendant any less susceptible to rehabilitative treatment. In *State v. Hopson,* 60 *N. J.* 1 (1971), rev'ing on dissenting opinion below, 114 *N. J. Super.* 146 (App. Div. 1971), this Court imposed an indeterminate sentence at Yardville even though the defendant had been charged with possession of heroin. Significantly, the majority of this Court rejected the dissent's statement that "the Legislature intended judges to visit mandatory minimum prison terms upon convicted narcotics violators rather than wholly indeterminate reformatory commitments." 60 *N. J.* at 4-5; footnote omitted.

I would adhere to the public policy favoring rehabilitation and remand for resentencing.

*For affirmance*—Chief Justice Hughes, Justices Mountain, Sullivan, Clifford and Schreiber and Judge Conford—6.

*For reversal and remandment*—Justice Pashman—1.