168 N.J. Super. 10 (1979)
401 A.2d 693
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
JAMES E. THOMAS, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued April 9, 1979.
Decided May 1, 1979.
*12 Before Judges FRITZ, BISCHOFF and MORGAN.
Mr. Steven Jay Greenstein, Designated Counsel, argued the cause for appellant (Mr. Stanley C. Van Ness, Public Defender, attorney).
Mr. Albert G. Fredericks, Deputy Attorney General, argued the cause for respondent (Mr. John J. Degnan, Attorney General of New Jersey, attorney).
PER CURIAM.
Defendant James E. Thomas appeals his conviction by jury for robbery (N.J.S.A. 2A:141-1), while armed (N.J.S.A. 2A:151-5), atrocious assault and battery (N.J.S.A. 2A:90-1), assault with an offensive weapon (N.J.S.A. 2A:90-3), carrying a pistol without a permit (N.J.S.A. 2A:151-41), entering without breaking with intent to rob (N.J.S.A. 2A:94-1) and conspiracy with Richard Dorsey and Nancy Thomas, his co-indictees, to commit armed robbery (N.J.S.A. 2A:98-1). Defendant was sentenced to an aggregate term of not less than 17 nor more than 25 years in State Prison.
The evidence adduced by the State indicated that defendant, Richard Dorsey and a third man, Irving Young, entered *13 the Lyric Theater in Asbury Park and produced weapons  Dorsey, a knife, Young, a starter's pistol; and defendant, a .22-caliber automatic pistol. Dorsey demanded and obtained money from the doorman, while Young and defendant proceeded into the office of the manager, Willie Plummer. In response to the robbers' demands, Plummer retrieved the night's receipts and gave them to Young. As Young was leaving, he turned and fired his starter's pistol at Plummer. Plummer proceeded to run into Young and knock the starter's pistol out of his hand, then ran at defendant to take his gun away also. He grabbed defendant's hand and the gun went off an inch or two from Plummer's face, wounding Plummer in the cheek and mouth. At trial Plummer positively identified defendant as the robber who shot him. The only other theater employee who testified could not identify anyone in the courtroom as one of the robbers. The thrust of defendant's defense was that he was not one of the men involved in the robbery. He produced a witness who testified that defendant's appearance at the time of the robbery was different from the description Plummer gave of his assailant.
The evidence was clearly sufficient to support the verdict of guilty returned by the jury. Nevertheless, we reluctantly conclude the judgment of conviction must be reversed and the matter remanded for a new trial because of prosecutorial excesses and improprieties. Repeatedly expressing concern for prosecutorial misconduct, the Supreme Court has stated that, in appropriate cases, a mere expression of displeasure would not be a sufficient remedy and more severe action may be necessary. State v. Spano, 64 N.J. 566, 568-569 (1974); State v. Farrell, 61 N.J. 99, 104 (1972); State v. Johnson, 65 N.J. 388, 391 (1974); cf. State v. Perry, 65 N.J. 45 (1974); State v. DiPaglia, 64 N.J. 288 (1974). This is such a case. Our review of the record satisfies us that the conduct of the prosecutor in the trial of this case induced errors of such magnitude and number as to deprive defendant of a fair trial. Fundamental *14 considerations of fairness mandate that the judgment of conviction be set aside and the case remanded for a new trial[1].
The following are among the more egregious instances of misconduct. Defendant contends the examination of the investigating detective, Reed, violated defendant's sixth amendment right of confrontation, pointing to the following questioning of Reed by the prosecutor:
Q. Now, you mentioned that after your investigation and after you were getting the warrants and so on and Mr. Young was picked up, at this point you still only had one suspect. Will you tell me what you did next in your investigation?
A. The investigation continued by myself, other detectives. We had acquired information in regards to suspects. We had received the name of  I had received the names through an informant, a nickname, in fact, and I had also received a name of the other  actually, the other name of the other suspects two and three.
Q. And, through this information, what developed?
A. Well, a complaint was made out as a result of continuing investigation for a Dorsey, Richard Dorsey.
Q. And was he arrested?
A. Yes. He was subsequently arrested on that morning.
Q. And, I take it, the warrant was based on information which, for now, we will say was from an informant?
A. Yes.
Q. Okay. Now, when Mr. Dorsey was arrested, were his rights given to him?
A. Yes, they were.
Q. And Mr. Dorsey gave a statement to you?
A. Yes, he did.
Q. All right. And, as a result of the statement, did Mr. Dorsey indicate who was involved in the robbery with him?
A. Yes, he did.
Q. All right. As a result of talking to Mr. Dorsey, did you sign another arrest warrant?
A. Yes, I did.
Q. And whose arrest warrant was that?
A. It was for James Thomas, James E. Thomas.
*15 Other questioning of Reed by the prosecutor on redirect examination is to similar effect:
Q. Detective, you ascertained some information concerning Mr. Thomas from an informant, did you not?
A. Yes, I did.
Q. And, specifically, the information referred to Mr. Thomas and Mr. Thomas' house, did it not?
A. Yes, it did.
Q. And then you took a statement from Mr. Dorsey, the one we are discussing, correct?
A. Yes, I did.
Q. And did the information in this statement from Mr. Dorsey coincide with the information you got from your informant?
A. Yes, it did.
Q. Were there any inconsistencies of note that you remember?
A. Not offhand.
The inescapable inference from Reed's testimony is that an informer had given him defendant's name. As a result, the jury was led to believe that an unidentified informer, who was not present in court and not subjected to cross-examination, had told Reed that defendant committed a crime. This testimony was inadmissible hearsay and violated defendant's right of confrontation. State v. Bankston, 63 N.J. 263, 269-271 (1973); State v. Robinson, 139 N.J. Super. 58, 62 (App. Div. 1976), certif. den. 75 N.J. 534 (1977). Additionally, Reed's testimony showed that Dorsey inculpated defendant, even before Dorsey testified. This too was inadmissible hearsay. State v. Felton, 131 N.J. Super. 344, 352 (App. Div. 1974), certif. den. 68 N.J. 140 (1975).
There are other instances of violation of the Bankston rule in Reed's testimony. The prosecutor led him, step-by-step, through his investigation, and had Reed give the complete story of the robbery based on his interviews with the witnesses, although Reed was not present at the time of the robbery and the witnesses themselves did not testify. This was also contrary to the hearsay rule and violated defendant's right to confront the witnesses against him. State v. Bankston, supra, 63 N.J. at 268-269.
*16 Another instance of inexcusable conduct occurred when the prosecutor asked Detective Reed to identify in court the man who had shot Plummer, and the detective pointed out defendant. However, during summation the prosecutor represented to the judge (out of the hearing of the jury) that Reed had never seen defendant, did not know him, and did not arrest him. Rather, according to the prosecutor, Reed had obtained a picture of defendant and showed it to the prosecutor prior to the trial, and that formed the basis for Reed's identification.
Other improprieties were committed by the prosecutor in his summation: (1) he said that Reed had learned from an informant that defendant might have been involved in the robbery, in violation of the Bankston principle; (2) he informed the jury that he called Dorsey to the stand not knowing what he was going to say, contrary to the Supreme Court's instruction in State v. Gallicchio, 44 N.J. 540, 547-548 (1965), and State v. Guido, 40 N.J. 191, 200 (1963) (when the record clearly discloses he suspected recantation); (3) he used a prior inconsistent statement of Dorsey as if it were substantive evidence, although the judge specifically reminded him that it was admissible only to affect Dorsey's credibility; (4) he asked the jury to draw a negative inference from the fact that defendant did not produce his wife to corroborate Dorsey's testimony that Dorsey had borrowed defendant's car, leaving defendant home at the time the robbery was committed, in blatant violation of Evid. R. 23(2) and Evid. R. 39; moreover, the prosecutor did not obtain prior judicial approval in accordance with State v. Clawans, 38 N.J. 162, 170-173 (1962), before commenting thereon; and (5) he concluded his summation by rebutting defense counsel's caution against drawing conclusions of guilt from the fact of an arrest, saying:
I am not even going to comment any further about people arrested are guilty and so on and so forth. I am telling you this man is guilty. I really don't care about anybody else, although I will tell you Mr. Dorsey is very guilty, Mr. Young is very guilty of the charge.
*17 Finally, the prosecutor said:
I ask you now to do your duty as jurors in this case. Consider all the evidence and come back with the only verdict possible. I submit to you, in my opinion, he is guilty on all counts.
When combined with his many references to the unknown informant, to Dorsey's statement (which was correctly not admitted into evidence) and to Reed's incompetent and hearsay testimony, the prosecutor's statements of his opinion of defendant's guilt suggested that his belief was based in part on information outside the evidence. The statements were therefore improper. State v. Farrell, supra, 61 N.J. at 103; State v. Thornton, 38 N.J. 380, 398 (1962), cert. den. 374 U.S. 816, 83 S.Ct. 1710, 10 L.Ed.2d 1039 (1963).
Although individually many of the above errors would have to be considered harmless, particularly since defendant did not object to most of them, we are satisfied that their cumulative effect deprived defendant of a fair trial. State v. Orecchio, 16 N.J. 125, 129 (1954). We are unable to determine from an examination of the record whether the indefensible conduct of the prosecutor is the result of an overzealous approach to his assignment or incompetence. Regardless of the cause, it is unacceptable. It demeans the entire criminal justice system and results in a needless waste of time of all the personnel involved in the trial process.
The judgments of conviction are reversed and the case remanded for retrial.
Defendant also argues the prosecutor's use of Dorsey's prior inconsistent statement to attack Dorsey's credibility was improper. Defendant contends the prosecutor had reason to suspect Dorsey might recant his prior testimony and testify contrary to his prior statement; that the prosecutor was not surprised by Dorsey's inconsistent testimony and it was therefore error for the prosecutor to fail to conform to the procedure established by the cases of State v. Gallicchio, *18 supra, 44 N.J. at 540, and State v. Guido, supra, 40 N.J. at 191, before embarking upon the cross-examination of his own witness. It is unnecessary for us to resolve that issue since we are reversing the judgments of conviction. At the retrial the prosecutor will now know the nature of the testimony to be expected from Dorsey. We assume that since the problem has been exposed, should the issue arise again the procedure established in the cited cases will be followed.
Our decision to reverse the judgments of conviction makes it unnecessary to pass upon defendant's argument that certain of his convictions should be merged. We do note, however, that the State has properly conceded that the conviction for assault with an offensive weapon should be merged with either the conviction for armed robbery or the conviction for atrocious assault and battery.
Reversed and remanded.
NOTES
[1] The trial was not conducted by appellate counsel but by a Monmouth County assistant prosecutor.