STATE OF NEW JERSEY, PLAINTIFF, v. KEVIN ROY RIBBECKE, DEFENDANT.

Superior Court of New Jersey
Law Division Hudson County

Decided May 25, 1982.

*Gaetano T. Gregory*, Asst. Prosecutor, for plaintiff (*Harold J. Ruvoldt, Jr.*, Hudson County Prosecutor, attorney).

*John J. Hughes*, for defendant.

COBURN, J. S. C.

The question presented is whether a young adult offender who committed manslaughter by firearm may be sentenced to an indeterminate term at the Youth Correctional Institution Complex notwithstanding the minimum terms and parole ineligibility provisions of *N.J.S.A.* 2C:43–6 c (commonly known as the Graves Act).

Defendant Kevin Roy Ribbecke, age 24, was indicted for aggravated assault (*N.J.S.A.* 2C:12–1 b(4)), possession of a gun for unlawful purposes (*N.J.S.A.* 2C:39–4), and aggravated manslaughter (*N.J.S.A.* 2C:11–4(a). A jury found defendant not

guilty of the assault and possession charges and failed to reach agreement on the aggravated manslaughter charge after extensive deliberations. Thereafter, the State and defendant submitted a plea arrangement for the court's approval: in return for defendant's plea of guilty to the lesser included offense of reckless manslaughter, the prosecutor agreed to recommend that no parole ineligibility term be imposed.

Kevin Ribbecke and the victim, Robert Lucas, were best friends. On September 20, 1981 they were celebrating the birth of Kevin's first child. Kevin had recently passed an examination for the Bayonne Police Department and at the beginning of the previous day had taken a test for the Bayonne Fire Department. Shortly before this incident, in full accordance with the law, he had purchased a revolver and bullets. These young men agreed that Robert should take photographs of Kevin holding the revolver with the barrel pointed towards Robert so that the tips of the bullets would show. Kevin loaded five bullets, leaving open the chamber aligned with the barrel. During the evening one of the young men cocked the gun, neither realizing that this action would bring a live round into shooting position. The friends continued eating and drinking alcoholic beverages into the early morning hours. Then, without purpose to harm or knowledge that his conduct would result in harm, Kevin, admittedly acting recklessly, but not under circumstances manifesting extreme indifference to the value of human life, so handled the weapon that a single bullet fired, killing Robert. Kevin immediately called the police. Until this terrible event defendant Kevin Ribbecke had led a life free of crime and had enjoyed in the community an excellent reputation for being a law-abiding and honest person.

Manslaughter committed with a gun is one of the offenses included within the Graves Act. The applicable portion of this law provides that a violator "shall be sentenced to a term of imprisonment" with a "minimum term" which "shall be fixed at, or between, one-third and one-half of the sentence imposed by the court or 3 years, whichever is greater ..., during which the

defendant shall be ineligible for parole." *N.J.S.A.* 2C:43–6 c. Were this the only relevant provision of law, this court would be obliged to reject the plea recommended by the State. However, defendant is less than 26 years of age and *N.J.S.A.* 2C:43–5 states that "any person" within that category who has committed a crime "may be sentenced to an indeterminate term" at the appropriate reformatory; and *N.J.S.A.* 30:4–148 instructs that when sentencing pursuant to § 43–5 the court "shall not fix or limit the duration of sentence." The Graves Act does not expressly provide that a court may not sentence a young adult pursuant to *N.J.S.A.* 2C:43–5. Thus, before sentence can be imposed on this youthful offender the court must resolve the conflict between the Graves Act and the youthful offender laws.

The problem of reconciling *N.J.S.A.* 30:4–148 with statutes mandating minimum terms of imprisonment is hardly new to this State. *State v. Hopson*, 60 *N.J.* 1 (1971); *State v. Lavender*, 113 *N.J.Super.* 576 (App.Div.1971); *State v. Brozi*, 125 *N.J.Super.* 485 (App.Div.1973); *State v. Prewitt*, 127 *N.J.Super.* 560 (App.Div.1974); *State v. Robinson*, 139 *N.J.Super.* 58 (App.Div. 1976).

*Hopson* involved a section of the narcotics laws which then required that a defendant "shall" be punished by "imprisonment with hard labor, for a term of not less than two years nor more than 15 years." The trial judge had sentenced defendant to the Youth Correctional Institution Complex for a minimum term of years. Essentially following *State v. Ammirata*, 104 *N.J.Super.* 304 (App.Div.1969), and *State v. Pallitto*, 107 *N.J.Super.* 96 (App.Div.1969), certif. den. 55 *N.J.* 309 (1970), a majority in the Appellate Division held that the trial court was required to sentence defendant to a minimum of two years, notwithstanding the provisions of *N.J.S.A.* 30:4–148. *State v. Hopson*, 114 *N.J. Super.* 146 (App.Div.1971). The Supreme Court reversed the judgment of the Appellate Division "for the reasons given by Judge Halpern in his dissenting opinion." *State v. Hopson, supra*, 60 *N.J.* at 2. Judge Halpern had made the following observations:

The *Ammirata* result was adopted in *Pallitto, supra,* and is being followed by the majority of this court. In my mind such construction is unwarranted. It is contrary to the approved and recognized philosophy that reformatory sentences are designed to correct and rehabilitate the offender, rather than to seek retribution. [Citations omitted].

The Legislature provided that only persons between the ages of 15 and 30 are eligible for confinement to a reformatory, if convicted of an offense punishable by imprisonment in the State Prison, and if never previously confined in a State Prison. (*N.J.S.A.* 30:4–147). Unquestionably, the Legislature, for about 70 years has felt that such persons had a better chance to be rehabilitated under an indeterminate sentence and returned to society as a useful member thereof, than persons not in that category. *In re Marlow,* 75 *N.J.L.* 400 (S.Ct. 1907). If the Legislature intended to break away from this long-standing philosophy of reformatory sentencing, it would have done so by specifically creating an exception in narcotic offenses. This is precisely what it did in enacting *N.J.S.A.* 2A:168–1, wherein it empowered courts to generally suspend prison sentences imposed except for violations of the Uniform Narcotic Drug Law (*N.J.S.A.* 24:18)—with the further exception that the sentences of first narcotic offenders could be suspended.

With due respect to the courts in *Ammirata* and *Pallitto,* and the majority of this court, I do not believe the Legislature intended to mandate a two year minimum when imposing a reformatory sentence under *N.J.S.A.* 24:18–47(c)(1). I see no objection, legal or otherwise, to the court in the instant case imposing an indeterminate reformatory term without a minimum. We must assume that the Board of Managers of the reformatory is cognizant of the Legislature's intent as expressed in *N.J.S.A.* 24:18–47 and would consider it in granting parole, as well as the best interests of the defendant and the public. Such construction is more compatible with the aims and purposes of the Legislature. [114 *N.J.Super.* at 151].

In *State v. Brozi, supra,* the court was confronted with the conflict between the kidnapping statute, *N.J.S.A.* 2A:118–1, which mandated a minimum of 30 years in prison, and *N.J.S.A.* 30:4–147, 148. Judge Carton wrote:

We see no reason why a different result should obtain when a reformatory sentence is imposed for kidnapping. We are not persuaded by the State's argument that the two statutes may be read *in pari materia;* that the policy of both statutes can best be expressed by recognizing the legislative mandate for minimum sentences regardless of the place where it is to be served. This argument attempts to reconcile two very different philosophies of correction. When a court sets a minimum sentence it in effect states that a person's offensive conduct necessitates confinement for a certain period. This in essence is a retributive approach. Reformatory sentences are designed to correct and rehabilitate the offender and are based upon a philosophy of rehabilitation rather than retribution. *State v. Horton,* 45 *N.J.Super.* 44 (App.Div.1957).

> It strikes us as incongruous to say to this defendant, a first offender, that he is sentenced to Yardville so that he can be rehabilitated and at the same time stipulate that this process must take a minimum of 30 years.
>
> The State seeks to distinguish *Hopson* solely on the basis that kidnapping is a more serious offense than possession of heroin. The flaw in this argument is that the gravity of the offense has no bearing on the issue. The issue is how to reconcile the conflicting statutes. [125 *N.J.Super.* at 488].

In *State v. Prewitt, supra,* the court noted that "[m]andatory minimum sentences, sometimes contained in our statutes, are inapplicable when the sentence is indeterminate." 127 *N.J.Super.* at 565, n.1; *State v. Spinks,* 66 *N.J.* 568, 575 (1975).

*State v. Robinson,* 139 *N.J.Super.* 58 (App.Div.1976), involved a young adult's conviction of murder in the first degree. The court ruled that a judge was powerless to commit the defendant to Yardville because the sentence of life imprisonment was imposed by the jury and the judge had no alternative but to pronounce it. In a *per curiam* opinion the court reasoned that in such cases

> No minimum or maximum is provided for, thus distinguishing the first degree murder statute from the statutes involved in *Hopson* and *Brozi.* When the Legislature fixes a single or mandatory penalty for a crime the courts have no alternative but to pronounce the prescribed sentence. It is only when the Legislature has provided for minimum and maximum terms that courts have discretion as to the sentence to be imposed. [at 65]

Accepting for present purposes the reasoning of *Robinson,* it must be noted that *N.J.S.A.* 2C:43–6 c does not contain a "single" penalty, nor does it contain a "mandatory" penalty in the sense in which that word is used in *Robinson, i.e.,* one specific term which must be pronounced by the judge.

In *State v. Spinks,* 66 *N.J.* 568, 575 (1975), the court observed: "Perhaps a sentencing judge should have the power to sentence a youthful offender to the Complex, but fix a minimum term that must be served. However, this would require an amendment to *N.J.S.A.* 30:4–148." That statute was amended when the new Code of Criminal Justice was adopted, but not with regard to this point. The only substantial change in the treatment of youthful offenders was to lower the age requirements from 30 to 26.

This court must assume that "the Legislature is thoroughly conversant with its own legislation and the judicial construction of its statutes." *Brewer v. Porch*, 53 *N.J.* 167, 174 (1969). There is nothing in the Graves Act language which is substantially different from the language contained in either the old narcotics law or the former kidnapping statute, discussed above with respect to the requirement of minimum punishments. Nor does there appear to be any legislative history reflecting an intent to overturn the *Hopson* and *Brozi* approach to this issue. Furthermore, the Legislature was aware of the reasoning approved by the Supreme Court in *Hopson* that an intent to exclude application of the youthful offender laws to particular crimes would not be inferred unless the Legislature specifically created the exception.

A construction of the new Penal Code resulting in a decision that all youthful offenders who commit a Graves Act violation must go to State Prison would be inconsistent with the very principles of construction contained in the code. *N.J.S.A.* 2C:1–2 directs the courts to construe the code so as to "give fair warning of the nature of the sentences that may be imposed on conviction of an offense" and to "differentiate among offenders with a view to a just individualization in their treatment." In *State v. McBride*, 66 *N.J.* 577, 580 (1975), the court expressed this philosophy: "A youthful offender eligible for sentence to the Complex should ordinarily be sentenced there unless good and substantial reasons exist for not so doing." Since the Code provides that *any person* under 26 years of age may be sentenced to the reformatory, and since the Graves Act does not expressly forbid such treatment and prior case law urges it, there is no doubt that to meet the Code's requirement of "fair warning" regarding sentencing alternatives, this court must resolve the conflict by following the prior cases and deciding that a defendant who comes within the youthful offender category may be committed to a reformatory without a minimum term or to State Prison if the court believes that application of a minimum term is appropriate. *See State v. Spinks, supra;*

*State v. Groce*, 183 *N.J.Super.* 168 (App.Div.1982). This interpretation accords with the rule that a penal statute "shall not be extended by tenuous interpretation beyond the fair meaning of its terms...." *State v. Provenzano*, 34 *N.J.* 318, 322 (1961).

The approach which New Jersey courts have taken to resolving conflicts between mandatory minimum sentence statutes and youth correction laws is supported by decisions in other jurisdictions. *United States v. MacDonald*, 455 *F.*2d 1259 (1 Cir. 1972), *cert.* den. 406 *U.S.* 962, 92 *S.Ct.* 2070, 32 *L.Ed.*2d 350 (1972); *United States v. Colamarco*, 320 *F.Supp.* 616 (E.D.N.Y. 1970); *Whitlock v. State*, 404 *So.*2d 795 (Fla.Ct.App.1981); *Trent v. State*, 403 *So.*2d 1131 (Fla.Ct.App.1981); *cf. People v. Davis*, 29 *Cal.*3d 814, 176 *Cal.Rptr.* 521, 633 *P.*2d 186 (Sup.Ct.1981).

For the foregoing reasons this court will accept the plea arrangement as submitted and sentence defendant to an indeterminate term at the Youth Correctional Institution Complex. No lesser sentence is available since it is clear from the analysis in *United States v. MacDonald, supra,* and it is implicit in the New Jersey authorities cited, that the proper resolution of the conflict between the subject laws prohibits suspension or other noncustodial dispositions.