SYLLABUS

(This syllabus is not part of the opinion of the Court. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Supreme Court. Please note that, in the interest of brevity, portions of any opinion may not have been summarized.)

**In the Matter of the Expungement Petition of J.S.** (A-84-13) (073376)
**In the Matter of the Expungement of the Criminal Records of G.P.B.** (A-2-14) (074541)

**Argued March 2, 2015 -- Decided August 10, 2015**

**PATTERSON, J., writing for a majority of the Court.**

In these appeals, the Court determines whether N.J.S.A. 2C:52-2(a), which permits the expungement of a conviction for certain indictable offenses if the person "has been convicted of a crime . . . and . . . has not been convicted of any prior or subsequent crime," bars expungement of the convictions of a defendant who pleads guilty in a single proceeding to multiple offenses that were committed within a short period of time.

J.S. is a thirty-four-year-old former New Jersey resident, who, in 2000, while a sophomore at Kean University, was arrested after twice selling marijuana to an undercover police officer during a five-day period. The first sale occurred on June 16, 2001, and involved 25.2 grams of marijuana. The second sale occurred on June 21, 2001, and involved 100 grams of marijuana. J.S was arrested and charged with nine offenses. On May 29, 2001, he pled guilty to a fourth-degree distribution charge arising from the June 16 sale, and a third-degree distribution charge arising from the June 21 sale. J.S. was sentenced to a three-year term of noncustodial probation. Five years after completing his sentence, he filed the expungement petition that is the subject of this appeal.

The trial court granted J.S.'s petition, reasoning that his two offenses were a "single spree" that, under In re Fontana, 146 N.J. Super. 264, 267 (App. Div. 1976), constituted a solitary "crime." In an unpublished opinion, the Appellate Division reversed. Finding that the court's reliance on Fontana was misplaced because that case applied an earlier version of the expungement statute, the panel adopted the reasoning of In re Ross, 400 N.J. Super. 117, 123 (App. Div. 2008), in which the Appellate Division applied the current statute and rejected the "one-night spree" concept. Under N.J.S.A. 2C:52-2(a), the panel concluded that J.S.'s two offenses were "prior or subsequent" to one another, thus barring expungement. This Court granted J.S.'s petition for certification. 217 N.J. 304 (2014).

G.P.B. is a fifty-two-year-old New Jersey resident and business owner, who, on April 19 and 20, 1999, committed several offenses in support of a scheme to offer illegal gifts to local officials in a particular municipality, in order to obtain a public contract for his business and a specific vote on a municipal resolution. G.P.B. pled guilty to four offenses: one count of third-degree conspiracy to offer gifts to a public servant and three counts of third-degree offering gifts to a public servant. He was sentenced to a county correctional facility for thirty days and ordered to perform 100 hours of community service and pay a $10,000 fine. G.P.B. petitioned for expungement on November 26, 2012, approximately ten years after his convictions.

The trial court granted G.P.B.'s petition, reasoning that his crimes were all part of a continuing conspiracy to influence a governing body and achieve a single aim, and that the conspiracy linked the charges together as one "crime" under N.J.S.A. 2C:52-2(a). In a published opinion, the Appellate Division reversed. In re G.P.B., 436 N.J. Super. 48, 52 (App. Div. 2014). The panel rejected the argument that the one-night spree concept of Fontana applied to the language of the current statute governing expungement of indictable offenses. Noting that G.P.B. had pled guilty to four offenses committed on two separate days, the panel concluded that he was not entitled to expungement. This Court granted G.P.B.'s petition for certification. 219 N.J. 630 (2014).

**HELD:** The plain language of N.J.S.A. 2C:52-2(a) precludes expungement of convictions when the petitioner has been convicted of multiple crimes, even when those crimes occurred within a short span of time.

1. The Legislature intended the expungement statute to provide relief to one-time offenders who have dissociated themselves with unlawful activity. As the law has changed over time, the Legislature has consistently strived to limit expungement to offenders who have committed no more than an isolated infraction in an otherwise law-abiding life. As originally enacted in 1931, and as amended in 1936, the statute permitted expungement when the offender had been convicted only once and "no subsequent conviction" had been entered against him or her. A later version of the statute with similar language was the subject of the Appellate Division's analysis in In re Fontana, 146 N.J. Super. 264, 267 (App Div. 1976), wherein the panel imported from sentencing law the concept of a "one-

night spree" in order to expunge the conviction of a defendant who had pled guilty to ten thefts committed over a nine-day period. Three years after Fontana, in 1979, the Legislature combined various expungement provisions into Chapter 52 of the new Code of Criminal Justice. At the same time, it amended the language identifying the requirements for expungement when by enacting N.J.S.A. 2C:52-2. Instead of the former requirement that "no subsequent conviction has been entered against" the petitioner, N.J.S.A. 2A:164-28 (repealed 1979), the Legislature limited expungement to offenders who have not "been convicted of any prior or subsequent crime," N.J.S.A. 2C:52-2(a). (pp. 12-17)

2. Since the enactment of N.J.S.A. 2C:52-2(a), this Court has not applied the text to a case involving multiple offenses committed over a short period of time and adjudicated in a single conviction. The first published appellate opinion analyzing in detail the revised "prior or subsequent crime" language of N.J.S.A. 2C:52-2(a) was In re Ross, 400 N.J. Super. 117, 120-24 (App. Div. 2008), wherein the panel determined that the words "prior" and "subsequent" modify the term "crime," not the term "conviction." Consequently, the panel rejected the Fontana holding, concluding that two crimes committed on separate occasions are precluded from expungement regardless of whether they carried a single date of conviction. Two years after the decision in Ross, the Legislature amended the expungement law to broaden opportunities for expungement in limited situations, such as when in the public interest or for certain third- and fourth-degree drug offenses. At that time, the Legislature neither altered the "prior or subsequent crime" language of N.J.S.A. 2C:52-2(a), nor abrogated the holding in Ross. (pp. 18-21)

3. The Court reviews the trial courts' applications of N.J.S.A. 2C:52-2(a) to the expungement petitions of J.S. and G.P.B. de novo. In effectuating the legislative intent of the statute, the Court first looks to its plain language, applying the words' ordinary meanings and construing them within the context of the surrounding provisions in a way that would not produce an absurd result. The plain language of the statute authorizes expungement of "a crime," not one or more crimes closely related in circumstances or time, while excluding those petitioners who have been "convicted of any prior or subsequent crime." The adjectives "prior or subsequent" modify "crime," not "conviction." Moreover, the 1979 change in the statutory language from "subsequent conviction" to "any prior or subsequent crime" implies a purposeful alteration in the substance of the law. Thus, although N.J.S.A. 2C:52-2(a) permits expungement of a single conviction arising from multiple offenses if those offenses occurred as part of a single, uninterrupted criminal event, the provision's plain language shows that the Legislature clearly intended to bar expungement when the offender has committed a second crime at an earlier or later time, whether or not those crimes are resolved in the same judgment of conviction. (pp. 21-29)

4. The plain language of N.J.S.A. 2C:52-2(a) does not permit the expungement of the convictions of either petitioner in these appeals. J.S. committed two offenses five days apart. Although similar in nature, they were not committed as part of a single, uninterrupted criminal event. Instead, each was a discrete "crime" within the meaning of N.J.S.A. 2C:52-2, and the second offense was "subsequent" to the first, thereby rendering J.S. ineligible for expungement. G.P.B. committed his offenses within a short time frame, as well as all in furtherance of the same conspiracy. However, each offense consisted of a separate criminal event. Consequently, G.P.B. also is ineligible for expungement since his crimes, although related, were "prior" and "subsequent" to each other. (pp. 29-30)

5. Although the dissent invokes policy arguments in support of broader access to the remedy of expungement, the majority notes that the Court's role is to construe the statute, not to pass judgment on the wisdom of the law or render an opinion as to its representation of social policy. To that end, should the Legislature determine that expungement should be available to offenders such as petitioners, convicted of multiple crimes that occurred in close succession but not concurrently, it may amend N.J.S.A. 2C:52-2 to effect that intent. (pp. 30-31)

The judgment of the Appellate Division is **AFFIRMED**.

**JUSTICE LaVECCHIA, DISSENTING,** joined by **JUSTICE ALBIN,** expresses the views that the majority's interpretation of N.J.S.A. 2C:52-2(a) is too restrictive given that the statutory language is susceptible to more than one plausible construction, and that, given the expungement statute's remedial purpose, a more generous reading is appropriate until such time as the Legislature has spoken with sufficient clarity on this issue.

**CHIEF JUSTICE RABNER, JUSTICES FERNANDEZ-VINA and SOLOMON, and JUDGE CUFF (temporarily assigned) join in JUSTICE PATTERSON's opinion. JUSTICE LaVECCHIA filed a separate dissenting opinion, in which JUSTICE ALBIN joins.**

IN THE MATTER OF THE
EXPUNGEMENT PETITION OF J.S.

IN THE MATTER OF THE
EXPUNGEMENT OF THE
CRIMINAL RECORDS OF G.P.B.

Argued March 2, 2015 – Decided August 10, 2015

On certification to the Superior Court, Appellate Division. (A-84-13, In the Matter of the Expungement Petition of J.S.)

On certification to the Superior Court, Appellate Division, whose opinion is reported at 436 N.J. Super. 48 (App. Div. 2014). (A-2-14, In the Matter of the Expungement of the Criminal Records of G.P.B.)

Mark P. Stalford argued the cause for appellant J.S.

Gerald Krovatin argued the cause for appellant G.P.B. (Krovatin Klingeman, attorneys; Mr. Krovatin and Ernesto Cerimele, on the brief).

Ian D. Brater, Special Deputy Attorney General Acting Assistant Prosecutor, argued the cause for respondent State of New Jersey (Christopher J. Gramiccioni, Acting Monmouth County Prosecutor, attorney).

1

Kelly Anne Shelton, Assistant Prosecutor, argued the cause for respondent State of New Jersey (Richard T. Burke, Warren County Prosecutor, attorney).

JUSTICE PATTERSON delivered the opinion of the Court.

These appeals present a question of statutory interpretation. The Court construes N.J.S.A. 2C:52-2(a), a component of the statutory scheme that authorizes the expungement of the records of certain criminal convictions under conditions established by the Legislature. That provision permits the expungement of a conviction for certain indictable offenses if the petitioner "has been convicted of a crime . . . and . . . has not been convicted of any prior or subsequent crime[.]" N.J.S.A. 2C:52-2(a). The Court determines whether the statutory language bars expungement of the convictions of a defendant who pleads guilty in a single proceeding to multiple offenses that were committed within a short period of time.

Petitioner J.S. pled guilty to two drug offenses committed within five days of one another. Petitioner G.P.B. pled guilty to four offenses arising from his attempt, in several communications over a two-day period, to offer political contributions to public officials in exchange for an award of public contracts or a negative vote on a municipal resolution. After serving their sentences, both petitioners sought expungement of their criminal records. In each proceeding, the

2

trial court granted the expungement petition, reasoning that each petitioner's closely-related offenses constituted a single "crime" within the meaning of N.J.S.A. 2C:52-2(a). In each case, an appellate panel reversed the trial court's determination, construing N.J.S.A. 2C:52-2(a) to bar expungement when the petitioner committed multiple offenses on separate occasions, even when those offenses occurred in quick succession.

We affirm the Appellate Division's decisions in both appeals. We construe the plain language of N.J.S.A. 2C:52-2(a) to preclude expungement when the petitioner has been convicted of multiple crimes, even when those crimes occurred within a short span of time. Our interpretation of N.J.S.A. 2C:52-2(a) is supported by the Legislature's decision to amend the statute following an Appellate Division decision that permitted expungement of multiple convictions arising from a short-term "spree" of offenses. We conclude that, as it is currently drafted, N.J.S.A. 2C:52-2(a) does not authorize expungement of the criminal records of individuals who are in the position of petitioners. If the Legislature determines that expungement should be available to such individuals, it can amend the statute to clarify its intent in that regard.

## I.

### A.

3

J.S. is a thirty-four-year-old former New Jersey resident, who now lives in Florida. Before moving, he worked as a manager in the health care field. In June 2000, when J.S. was a sophomore at Kean University, he was arrested after twice selling marijuana to an undercover police officer during a five-day period. The first sale occurred on June 16, 2001, and involved 25.2 grams of marijuana. The second sale occurred on June 21, 2001, and involved 100 grams of marijuana.[1]

J.S. was arrested and charged with a total of nine offenses: one count of second-degree distribution of a controlled dangerous substance (CDS) while on or within five hundred feet of a public park, N.J.S.A. 2C:35-7.1(a); two counts of third-degree possession of a CDS with intent to distribute while on or within 500 feet of a public park, N.J.S.A. 2C:35-7.1(a); one count of third-degree possession of a CDS with intent to distribute, N.J.S.A. 2C:35-5(b)(11); one count of third-degree distribution of a CDS, N.J.S.A. 2C:35-5(b)(11); one count of third-degree distribution of a CDS while on or within 500 feet of a public park, N.J.S.A. 2C:35-7.1(a); one count of fourth-degree possession of a CDS with intent to distribute, N.J.S.A. 2C:35-5(b)(12); one count of fourth-degree distribution

---

[1] J.S. represented in his affidavit in support of his petition for expungement that his arrests followed a "horrible decision" to obtain marijuana for a "co-worker" in transactions which generated no profit.

4

of a CDS, N.J.S.A. 2C:35-5(b)(12); and one count of fourth-degree possession of a CDS, N.J.S.A. 2C:35-10(a)(3). J.S. was also issued a summons charging him with two counts of disorderly persons marijuana possession, N.J.S.A. 2C:35-10(a)(4). Four of the charges arose from J.S.'s sale of marijuana on June 16, 2001, and the remaining five charges arose from J.S.'s sale of marijuana on June 21, 2000.

On May 29, 2001, J.S. pled guilty to a fourth-degree distribution charge, arising from his June 16, 2001 sale of marijuana, and to a third-degree distribution charge, arising from his June 21, 2000 sale of marijuana. Thus, J.S.'s convictions arose from two drug distribution offenses that involved small quantities of marijuana and occurred five days apart. J.S. was sentenced to a three-year term of noncustodial probation. He completed his sentence on February 8, 2007, and has paid the fees assessed by the sentencing court.

Five years after completing his sentence, J.S. filed the expungement petition that is the subject of this appeal. He stated in his supporting affidavit that he was interested in pursuing a nursing degree, but had not yet applied to nursing school because he anticipated that his criminal record would bar a career in nursing. The State opposed the petition, arguing that J.S. was not eligible for expungement because his convictions arose from two offenses committed five days apart.

5

The trial court held a hearing and granted J.S.'s expungement petition. It reasoned that J.S.'s two offenses constituted a "single spree," and that under the Appellate Division's decision in In re Fontana, 146 N.J. Super. 264, 267 (App. Div. 1976), those offenses constituted a solitary "crime." The trial court concluded that J.S. had no conviction for a "prior or subsequent crime" for purposes of N.J.S.A. 2C:52-2(a).

Because only five years had passed since the completion of J.S.'s sentence of probation, he was ineligible for expungement under the original version of N.J.S.A. 2C:52-2(a), which mandates a ten-year period before an offender may seek expungement. Instead, the trial court granted J.S.'s petition under two provisions added to the statute in a 2010 amendment. See L. 2009, c. 188. The court found that J.S. satisfied the "public interest" prong of N.J.S.A. 2C:52-2(a)(2), which requires "the passage of five years[,] no additional convictions[,] and a finding that expungement is in the public interest," In re Kollman, 210 N.J. 557, 571 (2012). The trial court also relied on N.J.S.A. 2C:52-2(c), which permits expungement of a conviction for the sale of twenty-five grams of marijuana or less despite the general bar on expungement of convictions "for the sale or distribution of a [CDS] or possession thereof with intent to sell[.]" N.J.S.A. 2C:52-2(c)(1). The court ordered that J.S.'s criminal record be

6

expunged, subject to limitations and exceptions set forth in the expungement statute, N.J.S.A. 2C:52-1 to -32.

The State appealed. In an unpublished opinion, the Appellate Division reversed the trial court's order of expungement. The panel held that the trial court had improperly relied on Fontana, supra, 146 N.J. Super. at 267, because Fontana applied an earlier version of the expungement statute, N.J.S.A. 2A:164-28, containing language distinct from that of N.J.S.A. 2C:52-2(a). Instead, the panel adopted the reasoning of another appellate panel, applying the current expungement statute and rejecting the "one-night spree" concept. See In re Ross, 400 N.J. Super. 117, 123 (App. Div. 2008). Deeming the statutory text clear and unambiguous, the panel held that J.S.'s two offenses were "prior or subsequent" to one another, thus barring expungement in his case.

We granted certification. 217 N.J. 304 (2014).

B.

Petitioner G.P.B. is a fifty-two-year-old New Jersey resident. He owns an environmental planning and land development consulting company. On April 19 and 20, 1999, G.P.B. committed several offenses in support of a scheme to offer illegal gifts to local officials in a particular municipality, in order to obtain a public contract for his business and a specific vote on a municipal resolution.

7

On April 19, 1999, G.P.B. and another individual had several conversations in furtherance of a conspiracy to carry out this scheme. G.P.B. and his co-conspirator spoke by telephone with the town's mayor, and offered him a $24,000 contribution to his county political party. In exchange, the mayor was asked to select G.P.B.'s company for several public contracts. In the alternative, G.P.B. and his co-conspirator offered the mayor a $10,000 contribution in exchange for selecting the company for all but one of the municipal contracts.

The same day, G.P.B. and his co-conspirator spoke by telephone in separate conversations with two members of the town council in the same municipality. G.P.B. offered each of the council members a $5000 campaign contribution in exchange for a negative vote on a municipal resolution, which would have awarded a contract to a competing business. The resolution was scheduled to be voted on the following day.

On April 20, 1999, the day of the scheduled vote, G.P.B. advised at least one of the council members that he would be provided with part of the money in advance of the vote. One of the officials contacted the county prosecutor, and G.P.B. was promptly arrested.

The State charged G.P.B. with four offenses: one count of third-degree conspiracy to offer gifts to a public servant and

three counts of third-degree offering gifts to a public servant, N.J.S.A. 2C:5-2, -11; N.J.S.A. 2C:27-6(b) (repealed 2003). In September 1999, G.P.B. pled guilty to all four offenses. He was sentenced to a county correctional facility for a term of thirty days, to be served on weekends. He was also required to serve 100 hours of community service and fined $10,000. He paid his fine immediately, and completed his sentence of incarceration and his community service on November 1, 2002.

G.P.B. filed his petition for expungement on November 26, 2012, approximately ten years after his convictions. He argued that for purposes of N.J.S.A. 2C:52-2(a), his offenses comprised a single "crime" committed over a forty-eight hour period, rather than a series of separate offenses. The State opposed G.P.B.'s petition for expungement, arguing that each of G.P.B,'s acts constituted a distinct crime and that his offenses were not consolidated into a single crime by virtue of the admitted conspiracy. The State maintained that G.P.B. did not meet the requirements of N.J.S.A. 2C:52-2(a).

The trial court granted G.P.B.'s expungement petition. It reasoned that G.P.B.'s crimes were all part of a continuing conspiracy to influence a governing body and achieve a single aim. The trial court viewed the admitted conspiracy between G.P.B. and the second individual as linking the charges together as one "crime" for purposes of N.J.S.A. 2C:52-2(a).

9

In a published opinion, the Appellate Division reversed the trial court's grant of G.P.B.'s expungement petition. In re G.P.B., 436 N.J. Super. 48, 52 (App. Div. 2014). The panel rejected the argument that the one-night "crime-spree" concept of Fontana, supra, 146 N.J. Super. at 267, applied to the language of the current statute governing expungement of indictable offenses, N.J.S.A. 2C:52-2. Id. at 51. Noting that G.P.B. had pled guilty to four offenses on two different days, it concluded that he was not entitled to expungement. Id. at 50, 52.

We granted G.P.B.'s petition for certification. 219 N.J. 630 (2014).

## II.

### A.

In support of his appeal, J.S. invokes the legislative purpose of the expungement statute: to assist the "one-time offender" who has led an otherwise lawful existence. N.J.S.A. 2C:52-32. He argues that the concept of a "one-time offender" is not limited to the individual who has committed only a single unlawful act. J.S. asserts that the term "one-time offender" encompasses an individual convicted of acts that constitute a continuing course of conduct, or crime "spree." He urges the Court to apply the principle set forth by the Appellate Division

10

in Fontana, on the ground that Fontana furthers the rehabilitative goal of the expungement law.

The State argues that J.S.'s reliance on Fontana is misplaced. It asserts that the language of N.J.S.A. 2C:52-2(a) plainly excludes a petitioner who has committed multiple crimes in a single "spree." Although the State urges the Court to affirm the Appellate Division's determination, it takes issue with the Appellate Division's view that N.J.S.A. 2C:52-2(a) may permit expungement of multiple crimes committed on the same date. To the State, the "prior or subsequent crime" language of the statute evinces the Legislature's intent to limit expungement to offenders convicted of a single crime, no matter how close in time that crime might be to another offense. It contends that J.S., convicted of two offenses five days apart, is clearly outside of the parameters of N.J.S.A. 2C:52-2(a).

### B.

G.P.B. does not urge the Court to adopt the Appellate Division's approach in Fontana or to recognize a crime "spree" as a sole offense in applying N.J.S.A. 2C:52-2(a). Instead, G.P.B. argues for a construction of the statute that would permit the expungement of multiple, interdependent crimes committed concurrently over a single twenty-four-hour period as part of a unitary scheme. He focuses on his conviction for conspiracy, arguing that the conspiracy and its overt acts

11

constitute a single offense, and that he committed no "prior" or "subsequent" crime.

The State relies on Ross, supra, 400 N.J. Super. at 117, to counter G.P.B.'s construction of N.J.S.A. 2C:52-2(a). It argues that because G.P.B. offered gifts to three different public officials in three separate conversations, he cannot be viewed as a "one-time offender" who committed a single crime. N.J.S.A. 2C:52-32. The State characterizes each of the four offenses at issue to be a distinct offense with a "prior" crime, a "subsequent" crime, or both in G.P.B.'s record. It urges the Court to affirm the Appellate Division's determination.

III.

A.

The expungement statute at the heart of these appeals serves "to eliminate 'the collateral consequences imposed upon otherwise law-abiding citizens who have had a minor brush with the criminal justice system.'" Kollman, supra, 210 N.J. at 568 (quoting In re T.P.D., 314 N.J. Super. 643, 648 (Law Div. 1997), aff'd o.b., 314 N.J. Super. 535 (App. Div. 1998)). The Legislature intended the statute to "provid[e] relief to the one-time offender who has led a life of rectitude and disassociated himself with unlawful activity[.]" N.J.S.A. 2C:52-32.

From the first iteration of New Jersey's expungement laws to the current statutory language, the Legislature has consistently strived to limit expungement to offenders who have committed no more than an isolated infraction in an otherwise law-abiding life.  As originally enacted in 1931, and as amended in 1936, the statute required that the offender have been convicted only once, and that "no subsequent conviction has been entered against" the offender.  L. 1931, c. 345, § 1; L. 1936, c. 174, § 1.[2]  As explained in the legislative history of the 1936 amendment,

> [t]he purpose of this act is to assist only those persons who have one single conviction against them, and from the time of the conviction and for a period of ten years thereafter have lived exemplary lives during that time and are able to show by their petition that they have made a complete moral change.
>
> [Sponsor's Statement to Assemb. 293 (Feb. 10, 1936).]

A later version of the statute with similar language -- permitting expungement if the offender has "a criminal conviction" with a suspended sentence or fine, but "no

---

[2] The 1931 statute was limited to offenders whose sentences were suspended and as to whom twenty years had passed since the conviction.  L. 1931, c. 345, § 1.  The 1936 version expanded the reach of the statute to include cases in which a "minor fine [was] imposed" and more than ten years had elapsed since the offender's conviction.  L. 1936, c. 174, § 1.

subsequent conviction" entered against him or her -- appeared in the statute until the Legislature's 1979 reorganization of the Criminal Code.  N.J.S.A. 2A:164-28 (repealed 1979).[3]

That statutory language was the subject of the Appellate Division's analysis in Fontana, supra, 146 N.J. Super. at 267. There, the defendant pled guilty in one plea hearing to ten thefts committed during a nine-day period in February and March of 1962.  Ibid.  Reasoning that the statute's purpose of "providing an incentive for rehabilitation of a person convicted of crime" would be furthered by expungement, the Appellate Division imported from sentencing law the concept of a "one-night spree":

> The crimes which form the basis of the convictions all involved the same participants and were committed within a comparatively short time.  The judgments of conviction on the pleas of guilty were all entered on the same day.  The criminal conduct can be viewed as akin to a "one[-]night spree[,]" which has generally received special consideration in sentencing, State v. McBride, 127 N.J.

---

[3] Between the 1936 amendment and the Legislature's 1979 reorganization of the Criminal Code, the expungement statute was amended several times without revision to this language:  once in 1937, R.S. 2:192-15 (establishing fee payable by petitioner), once in 1952, see N.J.S.A. 2A:164-28 (repealed 1979), L. 1951, c. 344 (increasing fine amount to $1000), and once in 1976, L. 1975, c. 383 (revising list of eligible crimes, eliminating requirement that conviction result in suspended sentence or fine, and running ten-year expungement timeline from later of conviction or release from imprisonment or parole).  Accord State v. Hawthorne, 49 N.J. 130, 138-39 (1967) (discussing evolution of early expungement statute), overruled on other grounds by State v. Sands, 76 N.J. 127, 147 (1978).

Super. 399 (App. Div. 1974), aff'd 66 N.J. 577 (1975), and the convictions as one conviction within the intent and meaning of the statute. Cf. State v. McCall, 14 N.J. 538 (1954); State v. Johnson, 109 N.J. Super. 69 (App. Div. 1970).

[Id. at 267.][4]

Three years after Fontana, as part of a comprehensive reform of the Criminal Code, the Legislature combined previous expungement provisions that were found in different criminal statutes with "others dealing with drug and juvenile offenses into a single chapter, Chapter 52 of the new Code of Criminal Justice." State v. A.N.J., 98 N.J. 421, 425 (1985) (citing L.

---

[4] The sentencing decisions cited by the Fontana panel in its application of a "one-night spree" concept to the expungement statute do not buttress the panel's conclusion. In McBride, supra, the court mentioned that the crimes at issue were committed in "one night's spree," but it based its reduction of the defendant's sentence on his "age and immaturity, including his cooperation with the police, and his pleas of guilty[.]" 127 N.J. Super. at 402. The Court in McCall, supra, did not discuss the concept of a one-night spree. 14 N.J. 538. There, this Court held that convictions for multiple offenses on the same day constituted a single conviction on "separate occasions" for purposes of N.J.S.A. 2A:85-12, a habitual-offender statute governing offenders sentenced for an offense after being "convicted on 3 separate occasions of high misdemeanors[.]" Id. at 544, 546-48 (internal quotation marks omitted). Johnson, supra, similarly involved a sentencing issue unrelated to the concept of a one-night spree; there, the Appellate Division held that, under the plain language of the Uniform Narcotic Drug Law, N.J.S.A. 24:18-47 (repealed 1971), a defendant who committed a second violation of that statute before being convicted of his first offense should be sentenced as a first offender, not a second offender. 109 N.J. Super. at 78. These decisions do not support the Fontana panel's construction of the expungement statute then in effect, N.J.S.A. 2A:164-28 (repealed 1979).

15

1979, c. 178).  The legislative committees reviewing the amendment stated that the revised Chapter 52 "spells out an equitable system of expungement of indictable and nonindictable convictions, as well as of arrest records," and "provides for a practical administrative procedure" to isolate, but not destroy, expunged records.  S. Judiciary Comm. Statement to S. 3203, at 11 (June 18, 1979); Assemb. Judiciary, Law, Pub. Safety & Defense Comm. Statement to Assemb. 3279, at 16 (June 28, 1979).

In the revised expungement statute, the Legislature established a procedure for the filing and determination of a petition for expungement.  L. 1979, c. 178 (codified at N.J.S.A. 2C:52-1 to -32).  When a court grants an expungement petition, "criminal records are extracted and isolated, but not destroyed."  Kollman, supra, 210 N.J. at 568 (citations omitted).  For most purposes, following expungement, "the arrest, conviction and any proceedings related thereto shall be deemed not to have occurred[.]"  N.J.S.A. 2C:52-27.  However, expunged records may be used in limited settings.  See N.J.S.A. 2C:52-17 to -23, -27 (identifying permitted uses of expunged records); State v. XYZ Corp., 119 N.J. 416, 421 (1990) (noting that "a central purpose of the [1979] expungement statute was to 'broaden[] the reliable base of information that will be maintained for law enforcement'" (quoting A.N.J., supra, 98 N.J. at 427-28)).

16

Significantly, the Legislature amended the language identifying the requirements for expungement when it enacted N.J.S.A. 2C:52-2, governing the expungement of indictable offenses:

> In all cases, except as herein provided, wherein a person has been convicted of a crime under the laws of this State and who has not been convicted of any prior or subsequent crime, whether within this State or any other jurisdiction, and has not been adjudged a disorderly person or petty disorderly person on more than two occasions may, after the expiration of a period of 10 years from the date of his conviction, payment of fine, satisfactory completion of probation or parole, or release from incarceration, whichever is later, present a duly verified petition as provided in section 2C:52-7 to the Superior Court in the county in which the conviction was entered praying that such conviction and all records and information pertaining thereto be expunged.
>
> [N.J.S.A. 2C:52-2(a); L. 1979, c. 178, § 109.]

Thus, instead of the former requirement that "no subsequent conviction has been entered against" the petitioner, see, e.g., N.J.S.A. 2A:164-28 (repealed 1979), the Legislature limited expungement to offenders who have not "been convicted of any prior or subsequent crime," N.J.S.A. 2C:52-2(a). The Legislature did not comment on the purpose of that amendment to the statutory text. S. Judiciary Comm. Statement to S. 3203, supra, at 11; Assemb. Judiciary, Law, Pub. Safety & Defense Comm. Statement to Assemb. 3279, supra, at 16.

17

In the decades since the enactment of N.J.S.A. 2C:52-2(a), this Court has not applied the statutory text to a case involving multiple offenses committed over a short period of time and adjudicated in a single conviction. The issue now before us was not raised in A.N.J., supra, 98 N.J. at 427, in which the Court applied a different provision of the expungement law, N.J.S.A. 2C:52-3, to a defendant with multiple disorderly persons offenses. In comparing the expungement provision for disorderly persons offenses with N.J.S.A. 2C:52-2(a)'s treatment of indictable offenses, the Court commented that "[b]y making its disqualifier for another 'crime' both retrospective and prospective, the Legislature has frozen the rights of the two-time criminal." A.N.J., supra, 98 N.J. at 424-27. Following that statement, the Court observed in a footnote, "[w]e need not cast doubt upon the view that a 'one-night spree' could still constitute a one-time offense." Id. at 427 n.3 (citing Fontana, supra, 146 N.J. Super. at 267). However, because A.N.J. involved disorderly persons offenses addressed by N.J.S.A. 2C:52-3, rather than a conviction arising from multiple indictable offenses committed within a short period of time under N.J.S.A. 2C:52-2(a), the Court's holding did not address the issue that is presented by this appeal. Id. at 427; see also In re J.N.G., 244 N.J. Super. 605, 609 n.2 (App. Div. 1990) (citing Fontana and noting that "[t]he State does not question

that the three convictions are properly considered as one for expungement purposes").

The first published appellate opinion analyzing in detail the revised "prior or subsequent crime" language of N.J.S.A. 2C:52-2(a) was the Appellate Division's decision in Ross, supra, 400 N.J. Super. at 120-24. There, the petitioner pled guilty to one count of third-degree bribery in violation of the statute then in effect, N.J.S.A. 2C:27-6, based on several bribes offered to a housing inspector. Id. at 119. He also pled guilty to one count of fourth-degree false swearing, N.J.S.A. 2C:28-2, arising from false testimony given several months after the bribery incidents. Ibid. Although the petitioner's conviction for false swearing was ineligible for expungement under N.J.S.A. 2C:52-2(b), he sought to expunge the bribery conviction, invoking the "one-night spree" doctrine of Fontana. Id. at 120, 123. Relying on the plain language of N.J.S.A. 2C:52-2(a), the Appellate Division rejected the petitioner's argument:

> Unquestionably, the words "prior" and "subsequent" do not modify the term "conviction." Instead, they modify the term "crime," which leads to the conclusion that if two crimes are committed on separate occasions, they are precluded from expungement regardless of whether the two crimes carry a single sentencing date and therefore a single date of conviction. . . . [H]ad the Legislature intended to permit the result petitioner urges, it would have used the

19

language "and who has no prior or subsequent convictions."

[Id. at 122.]

The panel concluded that when the Legislature used the term "subsequent crime" in N.J.S.A. 2C:52-2, "it intended to preclude expungement of a conviction where an individual commits a second crime even if the two crimes result in a single sentencing and conviction date," thus rejecting the Appellate Division's holding in Fontana. Id. at 123-24; see also In re R.Z., 429 N.J. Super. 295, 301-02) (App. Div. 2013) (applying reasoning of Ross and holding that petitioner bears burden to present prima facie proof that crimes were committed concurrently, not on "separate occasions").

Two years after the Appellate Division's decision in Ross, the Legislature amended the expungement law to "broaden opportunities for expungement." Kollman, supra, 210 N.J. at 562. The 2010 amendments to the statute created an alternative pathway for petitioners unable to comply with N.J.S.A. 2C:52-2(a)'s presumptive ten-year waiting period: expungement under the "public interest prong" of N.J.S.A. 2C:52-2(a), requiring "the passage of five years; no additional convictions; and a finding that expungement is in the public interest." Id. at 571 (citing N.J.S.A. 2C:52-2(a)(2)). In addition, the Legislature expanded the law to permit expungement of certain third and

20

fourth-degree CDS offenses, "where the court finds that expungement is consistent with the public interest, giving due consideration to the nature of the offense and the petitioner's character and conduct since conviction." N.J.S.A. 2C:52-2(c)(2); see also Kollman, supra, 210 N.J. at 571-72 (construing requirements of alternative five-year pathway).

Notably, the Legislature's 2010 effort to broaden the expungement opportunities for offenders, particularly individuals convicted of third- and fourth-degree CDS offenses, see L. 2009, c. 188, did not include any alteration to the "prior or subsequent crime" language of N.J.S.A. 2C:52-2(a) or abrogate the Appellate Division's construction of that language in Ross. The provision relevant to this appeal, N.J.S.A. 2C:52-2(a), remains in the form adopted by the Legislature in 1979. Compare N.J.S.A. 2C:52-2(a) (current), with L. 1979, c. 178, § 109 (1979 enactment).

B.

In that context, the Court reviews the trial courts' application of N.J.S.A. 2C:52-2(a) to the expungement petitions of J.S. and G.P.B. Because both trial courts resolved an issue of law in construing a statute, their determinations are reviewed de novo. State v. J.D., 211 N.J. 344, 354 (2012) (citing State v. Gandhi, 201 N.J. 161, 176 (2010)).

The Court's interpretation of N.J.S.A. 2C:52-2 is guided by familiar principles of statutory construction. The Court's role "is to effectuate the legislative intent of the expungement statute." In re D.H., 204 N.J. 7, 17 (2010) (internal quotation marks and citations omitted); see also N.J. Dep't of Children & Families v. A.L., 213 N.J. 1, 20 (2013).

The Court first looks to the statutory language as "the best indicator of [the Legislature's] intent." DiProspero v. Penn, 183 N.J. 477, 492 (2005). If the plain language of the statute is clear and "susceptible to only one interpretation," then the Court should apply that construction. Ibid. (citations omitted); see also Norman J. Singer & J.D. Shambie Singer, 1A Sutherland on Statutory Construction § 46:1, at 137-41 (7th ed. 2007) ("[W]here a statutory provision is clear and not unreasonable or illogical in its operation, a court may not go outside the statute to give it a different meaning."). The statute's words should generally be read in accordance with their ordinary meaning. DiProspero, supra, 183 N.J. at 492 (citing Lane v. Holderman, 23 N.J. 304, 313 (1957)). However, those words should not be construed in a way that would produce an absurd result. See State v. Lewis, 185 N.J. 363, 369 (2005) (citing State v. Gill, 47 N.J. 441, 444 (1966)).

A statute should be considered in light of its surrounding provisions. N.J. Dep't of Envtl. Prot. v. Huber, 213 N.J. 338,

22

365 (2013) (stating that "we must examine . . . statutory language sensibly, in the context of the overall scheme in which the Legislature intended the provision to operate" (citing Merin v. Maglaki, 126 N.J. 430, 436 (1992)).  To resolve inconsistencies among different sections of the expungement act, the Court must "seek the interpretation that will make the most consistent whole of the statute."  A.N.J., supra, 98 N.J. at 424 (citing Poswiatowski v. Standard Chlorine Chem. Co., 96 N.J. 321, 329-30 (1984)); see also In re Petition for Referendum on City of Trenton Ordinance 09-02, 201 N.J. 349, 359 (2010) (noting that Court must read statute's sections "'to provide a harmonious whole'" (quoting Burnett v. Cnty. of Bergen, 198 N.J. 408, 421 (2009)).

The plain language of N.J.S.A. 2C:52-2(a) expresses the Legislature's intent to permit expungement of a single conviction arising from multiple offenses only if those offenses occurred as part of a single, uninterrupted criminal event. Using the singular rather than the plural form, the statute authorizes expungement of "a crime under the laws of this State" -- not one or more crimes closely related in circumstances or in time.  N.J.S.A. 2C:52-2(a).  With the expansive adjective "any," N.J.S.A. 2C:52-2(a) excludes petitioners who have been "convicted of any prior or subsequent crime."  The statute's import is clear:  no matter how many offenses are resolved by

23

one conviction, expungement is available only for a single "crime" and is unavailable if another "crime" took place before or after the offense to be expunged.  See Ross, supra, 400 N.J. Super. at 122 (noting that Legislature's choice to modify "crime," rather than "conviction," with adjectives "prior" and "subsequent," supports conclusion that expungement is unavailable for crimes committed on separate occasions).

With a simple adjustment of its language, the Legislature could have authorized expungement of the records of a crime, even if the petitioner committed a prior or subsequent crime that was related, or close in time, to the crime to be expunged. Instead, in the broadest possible terms, the Legislature excluded from expungement a crime that preceded, or was followed by, any other crime.

That conclusion is underscored by the contrasting language used by the Legislature when it described multiple offenses committed on different occasions.  For example, the statute authorizes expungement for an indictable offense if the petitioner "has not been convicted of any prior or subsequent crime . . . and has not been adjudged a disorderly person or petty disorderly person on more than two occasions."[5]  N.J.S.A.

_____

[5] Contrary to the view of our dissenting colleagues, post at __ (slip op. at 8-9), the Legislature's language in addressing expungement of indictable offenses and its approach to disorderly persons is not parallel, but directly contrasting.

24

2C:52-2(a).  Another provision of the statutory scheme allows expungement of a disorderly persons offense if the petitioner, among other requirements, demonstrates that he or she has not been convicted "of another three disorderly persons or petty disorderly persons offenses[.]"  N.J.S.A. 2C:52-3.  Thus, when the Legislature has decided to allow expungement notwithstanding the presence of multiple offenses in the petitioner's record, it has had no difficulty expressing that intent.

Moreover, the Legislature's 1979 amendment of the statutory language is significant to our analysis.  L. 1979, c. 178.  Under the language of the prior statute, the question was whether the petitioner had a "subsequent conviction."  N.J.S.A. 2A:164-28 (repealed 1979).  Although there is sparse guidance as to the meaning of that language in the legislative history of the predecessor expungement statute, the statement accompanying the first amendment to the statute in 1936 indicates that the Legislature's purpose in enacting that version was to provide relief to someone with "one single conviction."  Sponsor's Statement to Assemb. 293, supra.  In that context, where the statutory language and legislative history require only one conviction, but are silent as to whether that conviction may

---

See N.J.S.A. 2C:52-2(a); 2A Sutherland on Statutory Construction, supra, § 46:6, at 261-63 ("Different words used in the same, or a similar, statute are assigned different meanings whenever possible.").

25

have adjudicated multiple offenses, the Appellate Division adopted the "one-night spree" concept in Fontana, supra, 146 N.J. Super. at 267.

Thereafter, in its 1979 amendment to the statute, the Legislature altered the relevant inquiry. Instead of precluding expungement if a petitioner has a "subsequent conviction," N.J.S.A. 2A:164-28 (repealed 1979), the current statute bars expungement if the petitioner has a conviction for "any prior or subsequent crime." N.J.S.A. 2C:52-2(a). Although the Legislature did not identify Fontana as a factor in that amendment, it is presumed to have been "'thoroughly conversant with its own [prior] legislation and the judicial construction of its statutes.'" Nebesne v. Crocetti, 194 N.J. Super. 278, 281 (App. Div. 1984) (quoting Brewer v. Porch, 53 N.J. 167, 174 (1969)); see also Kollman, supra, 210 N.J. at 572 (citing "long-standing canon of statutory construction" presuming Legislature's familiarity with "judicial interpretation of its enactments"); State v. Chapland, 187 N.J. 275, 291 (2006) (stating that "the Legislature is presumed to be aware of the judicial construction placed on an enactment"). As the Court noted in Nagy v. Ford Motor Co., 6 N.J. 341, 348 (1951), "a change of language in a statute ordinarily implies a purposeful alteration in substance of the law." (internal quotation marks omitted).

26

Thus, the Legislature that enacted N.J.S.A. 2C:52-2 is presumed to have been aware of the judicial construction of the expungement statute's earlier version:  the Appellate Division's holding in Fontana that a "spree" of offenses could be expunged. See Ross, supra, 400 N.J. Super. at 123-24 (holding that, when it enacted N.J.S.A. 2C:52-2, Legislature "deliberately chose to alter the more expansive view of expungement that had existed under N.J.S.A. 2A:164-28 and that was exemplified by [the] decision in Fontana").  Notably, the Legislature has not further amended the statute since the Appellate Division in Ross rejected the "one-night spree" concept.

In their construction of the statute, our dissenting colleagues "view as most relevant the legislative focus on the verb 'has been convicted' rather than the majority's focus on the timing of the crime."  Post at __ (slip op. at 7).  It is not the majority, but the Legislature, that has focused the inquiry on the "timing of the crime."  In the statute's disqualifying phrase "and who has not been convicted of any prior or subsequent crime," the adjectives "prior or subsequent" modify the noun "crime," not the noun "conviction."  N.J.S.A. 2C:52-2(a).  The Legislature could have written the statute as our dissenting colleagues describe it; indeed the prior statute, N.J.S.A. 2A:164-28, used the term "subsequent conviction" to convey a meaning close to that urged in the dissent.  Our task,

27

however, is to construe the statue as it is written, and the language of N.J.S.A. 2C:52-2(a) makes clear the Legislature's intent.

In short, notwithstanding its substantial expansion of opportunities for expungement in other respects in its 1979 and 2010 amendments,[6] the Legislature evidently sought a stricter limit on the expungement of multiple offenses when it amended N.J.S.A. 2C:52-2 to add the term "prior or subsequent crime." L. 1979, c. 178. The Legislature limited expungement to a single "crime." N.J.S.A. 2C:52-2(a). A single crime does not necessarily result in a single offense, given that multiple charges may arise from one crime. Rather, it involves a single, uninterrupted criminal event or incident.[7] The Legislature clearly intended to bar expungement when the offender has

---

[6] N.J.S.A. 2C:52-2 was amended on other occasions since 1979, but only the 2010 amendment expanded the availability of expungement. L. 2009, c. 188 (2010 amendment); see also L. 2013, c. 136 (adding offenses not available for expungement); L. 1994, c. 133 (Megan's Law convictions not subject to expungement); L. 1993, c. 301 (precluding from expungement convictions by persons holding public office where crime involved such office); L. 1989, c. 300 (requiring notification of State Board of Medical Examiners upon receipt of petition for expungement in certain circumstances).

[7] Our dissenting colleagues misconstrue our holding to "preclude[] a person from even applying for expungement if he or she happens to plead to two counts -- as opposed to one count -- of an indictment as part of an agreement." Post at __ (slip op. at 6). This is not our holding; a single crime is subject to expungement under N.J.S.A. 2C:52-2(a), even if it results in multiple counts.

committed a second crime at an earlier or later time, whether or not those crimes are resolved in the same judgment of conviction. See ibid.; Ross, supra, 400 N.J. Super. at 123-24.

C.

The plain language of N.J.S.A. 2C:52-2(a) does not permit the expungement of the convictions of either petitioner in these appeals.

J.S. committed two offenses five days apart. His offenses were similar; each consisted of a sale of a small quantity of marijuana to an undercover officer and each led to a guilty plea to a distribution charge. J.S.'s crimes, however, were not committed as part of a single, uninterrupted criminal event. Instead, each was a discrete "crime" within the meaning of N.J.S.A. 2C:52-2(a), and the second offense was "subsequent" to the first. J.S. is not eligible for expungement under the statute's plain language.

G.P.B. also committed his offenses within a short time frame -- in his case, the span of two days. His four offenses were committed in furtherance of the same conspiracy to influence municipal officials by offering gifts in exchange for votes on public questions before those officials. Each offense, however, consisted of a separate criminal event. Each of the communications that gave rise to the charges of offering gifts to a public servant occurred at a different time and in a

29

separate telephone call to the public official whom G.P.B. sought to influence. His crimes, although related, were "prior" and "subsequent" to one another, and they are therefore not subject to expungement under N.J.S.A. 2C:52-2.

## D.

Our dissenting colleagues invoke policy arguments in support of broader access to the remedy of expungement. Post at __ (slip op. at 1-2, 12-13). Our role, however, is to construe the expungement statute, not to "pass judgment on the wisdom of a law or render an opinion on whether it represents sound social policy." Caviglia v. Royal Tours of Am., 178 N.J. 460, 476 (2004) (citing State Farm Mut. Auto. Ins. Co. v. State, 124 N.J. 32, 45 (1991)). As the Court has noted, "'[i]t goes without saying that the wisdom, good sense, policy and prudence (or otherwise) of a statute are matters within the province of the Legislature and not of the Court.'" State v. Gerald, 113 N.J. 40, 84-85 (1988) (quoting White v. Twp. of N. Bergen, 77 N.J. 538, 554-55 (1978), superseded by constitutional amendment as stated in State v. Cruz, 163 N.J. 403, 411-12 (2000)). If the Legislature determines that expungement should be available to offenders such as petitioners, convicted of multiple crimes that occurred in close succession but not concurrently, it has the authority to amend N.J.S.A. 2C:52-2 to effect that intent.

## IV.

30

The judgment of the Appellate Division is affirmed.



CHIEF JUSTICE RABNER, JUSTICES FERNANDEZ-VINA and SOLOMON, and JUDGE CUFF (temporarily assigned) join in JUSTICE PATTERSON's opinion. JUSTICE LaVECCHIA filed a separate dissenting opinion, in which JUSTICE ALBIN joins.

IN THE MATTER OF THE
EXPUNGEMENT PETITION OF J.S.

_____

IN THE MATTER OF THE
EXPUNGEMENT OF THE
CRIMINAL RECORDS OF G.P.B.

JUSTICE LaVECCHIA, dissenting.

It is reported that almost one out of every three Americans has been arrested by age twenty-three.  Amy L. Solomon, In Search of a Job:  Criminal Records as Barriers to Employment, NIJ J., June 2012, at 42, 43 (citing Robert Brame et al., Cumulative Prevalence of Arrest from Ages 8 to 23 in a National Sample, 129 Pediatrics 21, 21-27 (2012)).  The future prospects for such individuals are not encouraging.  Two National Institute of Justice-funded studies found that "a criminal record reduces the likelihood of a job callback or offer by approximately [fifty] percent."[1]  Solomon, supra, at 43 (finding

_____

[1] "The National Institute of Justice [is] the research, development and evaluation agency of the U.S. Department of Justice[,] . . . dedicated to improving knowledge and understanding of crime and justice issues through science." About NIJ, Nat'l Inst. of Just., http://nij.gov/about/Pages/welcome.aspx (last modified Feb. 25, 2013).

effect to be disproportionately felt among African Americans and Latinos).  A study by the American Bar Association found "more than 38,000 statutes that impose collateral consequences on people convicted of crimes," and that eighty percent of those statutes serve as functional "denial[s] of employment opportunities."  Solomon, supra, at 44 (citing Am. Bar Ass'n, Nat'l Inventory of the Collateral Consequences of Conviction, http://www.abacollateralconsequences.org/ (last visited July 22, 2015)).  Another study demonstrated that a majority of employers "probably" or "definitely" would not hire applicants with criminal records.  Solomon, supra, at 46 (internal quotation marks omitted) (citing Harry J. Holzer et al., Perceived Criminality, Criminal Background Checks, and the Racial Hiring Practices of Employers, 49 J.L. & Econ. 451, 453-54 (2006)); see also Michelle Natividad Rodriguez & Maurice Emsellem, The Nat'l Emp't Law Project, 65 Million "Need Not Apply":  The Case for Reforming Criminal Background Checks for Employment, 13-18 (2011), available at www.nelp.org/content/uploads/2015/03/65_Million_Need_Not_Apply1.pdf (finding frequent "no-hire" policies among major employers on Craigslist for applicants with one or more arrest or criminal conviction).

For many people with criminal convictions, the availability of expungement is essential to their return to gainful lives.

2

Yet, the majority adopts a restrictive approach in its interpretation of the section of the expungement statute that addresses the threshold for being eligible even to apply for expungement. In my view, that statutory language does not plainly support the approach chosen by the majority. This is remedial legislation. The ambiguity in the eligibility provision of the expungement scheme permits a broader construction than that taken by the Court today. In taking a narrow view of who is eligible to apply for expungement consideration, the majority reads the statute too restrictively. I therefore respectfully dissent.

I.

The focus in this matter is on N.J.S.A. 2C:52-2(a) (Section 2(a)), which addresses only eligibility to apply for expungement. In pertinent part, it provides:

> In all cases, except as herein provided, wherein a person has been convicted of a crime under the laws of this State and who has not been convicted of any prior or subsequent crime, whether within this State or any other jurisdiction, and has not been adjudged a disorderly person or petty disorderly person on more than two occasions may, after the expiration of a period of [ten] years from the date of his conviction, payment of fine, satisfactory completion of probation or parole, or release from incarceration, whichever is later, present a duly verified petition as provided in [N.J.S.A.] 2C:52-7 to the Superior Court in the county in which the conviction was entered praying that such

3

conviction and all records and information pertaining thereto be expunged.

[N.J.S.A. 2C:52-2(a).]

Section 2(a) was enacted in 1979 when the Legislature consolidated and amended previously scattered statutes addressing expungement to create a comprehensive scheme governing expungement collected in Chapter 52 of New Jersey's new criminal code. See L. 1979, c. 178, §§ 107 to 139 (codified as amended at N.J.S.A. 2C:52-1 to -32). In doing so, the Legislature sought to create "an equitable system of expungement" with "a practical administrative procedure" to ensure the isolation of expunged records. S. Judiciary Comm. Statement to S. No. 3203, at 11 (June 18, 1979); Assemb. Judiciary, Law, Pub. Safety & Def. Comm. Statement to Assemb. No. 3279, at 16 (June 28, 1979).

Prior to the 1979 amendment, the pre-title-2C expungement statute, N.J.S.A. 2A:164-28, provided as follows in respect of eligibility to apply for expungement:

> In all cases wherein a criminal conviction has been entered against any person whereon sentence was suspended, or a fine imposed of not more than $1,000, and no subsequent conviction has been entered against such person, it shall be lawful after the lapse of [ten] years from the date of such conviction for the person so convicted to present a duly verified petition to the court wherein such conviction was entered, setting forth all the facts in the matter and praying for the relief provided for in this section.

4

        [(Emphasis added).]

Nothing in the legislative history sheds light on the
Legislature's reason for the changed wording in Section 2(a)'s
description of who is eligible to apply for expungement.

In my view, Section 2(a)'s meaning is ambiguous.  The
statute's prescription that the application process for
expungement is open to "a person [who] has been convicted of a
crime . . . and who has not been convicted of any prior or
subsequent crime" does not provide a clear answer to whether
someone with a judgment of conviction for multiple offenses is
eligible to apply for expungement.  That quoted language does
not compel a construction that permits only a person with a
conviction for a single-count offense to apply.  The legislative
choice of language becomes less clear in its meaning in this
respect when one considers that the statute's self-proclaimed
purpose is to provide relief for the "one-time offender,"
N.J.S.A. 2C:52-32, and that a single criminal transaction can
give rise to multiple counts.  See State v. Yarbough, 100 N.J.
627, 638, 645 (1985) (acknowledging that "multiple charges may
stem from one incident, as when one possesses and then sells a
narcotic drug," or from pursuit of single objective (citation
and internal quotation marks omitted)); see also Black's Law
Dictionary 1188 (9th ed. 2009) (defining "separate offense" as

including "[a]n offense arising out of a different event entirely from another offense under consideration"). Indeed, the meaning of someone "who has not been convicted of any prior or subsequent crime" is not clear on its face, at least not as clear as one might hope in order to justify narrowly reading a remedial statute. See Maglies v. Estate of Guy, 193 N.J. 108, 123 (2007) (recognizing remedial legislation is "deserving of liberal construction" (citation and internal quotation marks omitted)); see also 3 Norman J. Singer & J.D. Shambie Singer, Sutherland Statutory Construction § 60:1 at 250 (7th ed. 2008) ("Remedial statutes are liberally construed to suppress the evil and advance the remedy.").

But to the majority, the language in Section 2(a) is clear and allows for an interpretation that plainly precludes a person from even applying for expungement if he or she happens to plead to two counts -- as opposed to one count -- of an indictment as part of an agreement. For example, under the majority's construction, an individual who pleads to selling a small amount of drugs to two people on a certain day has no right to an evaluation of the merits of the expungement application. In contrast, an individual in a neighboring county who is allowed to plead to one count of distribution under comparable circumstances may apply for expungement. That inequity is not clearly indicated from the plain language of the statute.

The majority construes the statute to limit applications for expungement of an indictable offense to those individuals who are convicted of a single count, or to a "single, uninterrupted criminal event or incident." Ante at ___ (slip op. at 23). To be sure, the majority's "single, uninterrupted criminal event or incident" elaboration highlights the lack of clarity to its approach that centers on the term "crime" when applying the expungement statute. And, it demonstrates the majority's need to address the ambiguity in the phrase "has been convicted of a crime," a point that supports the view that there is uncertainty about the legislative language. The majority's interpretation is not the only reasonable construction of the statute.

I view as most relevant the legislative focus on the verb "has been convicted" rather than the majority's focus on the timing of the crime. Under the equally plausible construction that focuses on the time of conviction as the most relevant consideration, the number or order of the underlying facts of the counts for which a person is indicted and for which convicted are not controlling at the application stage. The statute fairly may be read to permit the filing of an application for expungement of an indictable offense or offenses when a person has not been convicted of a crime prior or subsequent to the judgment of conviction that he or she seeks to expunge. The judgment of conviction may contain multiple

7

counts; however, on the day of conviction, the person has not been previously or subsequently convicted of another offense. He or she is a "one-time offender." See N.J.S.A. 2C:52-32. I would hold that such individuals are eligible to apply for expungement and have their application vetted under the many other provisions that instruct courts on how to evaluate the merits of the application.

Before leaving the topic of the statute's language and whether it plainly precludes the interpretation I advance, it bears noting that the language in Section 2(a) pertaining to disorderly persons convictions supports the conclusion that the focus should be on the date of entry of the judgment of conviction itself, rather than on the number of counts contained in the judgment of conviction. Section 2(a) also specifies that, in order to qualify and apply for an expungement, a person must be able to assert that he or she "has not been adjudged a disorderly person or petty disorderly person on more than two occasions." N.J.S.A. 2C:52-2(a) (emphasis added). That clause focuses on occasions of conviction (date the judgment was entered), rather than the counts contained therein. Again, I view the legislative focus to be on the verb "adjudged" and its timing, not on how many incidents were involved in the adjudication. The parallelism is notable because the Legislature, when setting forth eligibility to apply for

8

expungement, was focused on when and how many times the person was adjudged disorderly, not on how many underlying offenses there were.  Given the ambiguity in Section 2(a) in respect of disqualifying criminal convictions, the clearly worded language regarding disorderly persons adjudications should influence and support our reading of the statute, not undercut it as the majority views the two requirements.

Furthermore, a less restrictive reading of Section 2(a) than that chosen by the majority is particularly appropriate given that Section 2(a) governs the threshold determination of whether people can even apply for expungement, not whether a petition will be granted.  Reading that threshold provision narrowly is out of step with the expungement statute's remedial nature and ignores that there are many other bases for disqualifying applicants.

As remedial legislation, the expungement statute should be interpreted liberally.  See Miah v. Ahmed, 179 N.J. 511, 525 (2004) (explaining that remedial goals of Anti-Eviction Act merit liberal construction); Lindquist v. City of Jersey City Fire Dep't, 175 N.J. 244, 258 (2003) (noting policy of liberally construing Workers' Compensation Act in light of remedial purpose).  We have recognized the remedial aspects to expungement on prior occasions. Expungement serves "to eliminate 'the collateral consequences imposed upon otherwise

9

law-abiding citizens who have had a minor brush with the criminal justice system.'" In re Kollman, 210 N.J. 557, 568 (2012) (quoting In re T.P.D., 314 N.J. Super. 643, 648 (Law Div. 1997), aff'd o.b., 314 N.J. Super. 535 (App. Div. 1998)). In Kollman, we noted that the "Legislature's goals" in passing the expungement statute were "to reward efforts at rehabilitation and facilitate reentry when appropriate, and to provide relief to certain one-time offenders who have rejected their criminal past." Id. at 580 (citing *N.J.S.A.* 2C:52-32).

By allowing for the less strict interpretation of who may apply for expungement, the public interest is not disserved. The statutory scheme provides other bases for denying expungement for an indictable offense that safeguard the public interest by making convictions for certain serious offenses public knowledge and preventing serial offenders from abusing the expungement process. Convictions for certain serious crimes cannot be expunged. See N.J.S.A. 2C:52-2(b) (precluding expungement of convictions for criminal homicide, defined in N.J.S.A. 2C:11-2 (except death by auto, N.J.S.A. 2C:11-5); kidnapping, N.J.S.A. 2C:13-1; human trafficking, N.J.S.A. 2C:13-8; sexual assault or aggravated sexual assault, N.J.S.A. 2C:14-2; robbery, N.J.S.A. 2C:15-1; arson and related offenses, N.J.S.A. 2C:17-1; and numerous other offenses). N.J.S.A. 2C:52-14 outlines grounds for which an application "shall be denied."

10

Under N.J.S.A. 2C:52-14(a), expungement must be denied when "[a]ny statutory prerequisite, including any provision of this chapter, is not fulfilled or there is any other statutory basis for denying relief." Denial is also required under N.J.S.A. 2C:52-14(b), when "[t]he need for the availability of the records outweighs the desirability of having a person freed from any disabilities as otherwise provided in this chapter." And, N.J.S.A. 2C:52-14(e) precludes a court from granting a petition where "[a] person has had a previous criminal conviction expunged regardless of the lapse of time between the prior expungement, or sealing under prior law, and the present petition."

Finally, the construction advanced in this separate opinion aligns with the fact that the legislative history of Section 2(a) provides no indication that the Legislature intended the change in wording from the pre-amendment statute to alter the statute's meaning or to eliminate the approach taken in In re Fontana, 146 N.J. Super. 264, 266-67 (App. Div. 1976), which permitted an application to be considered, and even granted, notwithstanding that a criminal spree of short duration resulted in convictions for more than one offense.[2] The legislative

---

[2] The majority reads much into the legislative change that took the word "conviction," used as a noun in the pre-title-2C statute, and used it as a verb in N.J.S.A. 2C:52-2(a). There is nothing to support that that language change meant to sub

11

history of the statute does not indicate a specific intent to eliminate the Fontana approach to a one-time spree of multiple offenses charged and pled in a single conviction, when at the time the judgment of conviction for the offenses was entered, the individual had not previously been convicted and has not since been convicted of another criminal offense.

Notably, shortly after the passage of the amended statute, this Court did not view the new language as abrogating the Fontana "one-night spree" doctrine. State v. A.N.J., 98 N.J. 421, 427 n.3 (1985). A.N.J. is the only time this Court has commented, albeit in dicta, on Fontana's spree doctrine, or on the ability, generally, to expunge multiple convictions under N.J.S.A. 2C:52-2(a). Ibid. In that case, the Court acknowledged that "[b]y making its disqualifier for another 'crime' both retrospective and prospective [in the 1979 amendment], the Legislature has frozen the rights of the two-time criminal." Id. at 427. However, in a footnote to that sentence, the Court, citing Fontana, stated: "We need not cast doubt upon the view that a 'one-night spree' could still constitute a one-time offense." Id. at 427 n.3.

---

silentio abandon the Fontana approach. It may have signaled simply what is posited in this opinion: that the statute permits the filing of an application for expungement when the person has not been convicted of a crime prior or subsequent to the judgment of conviction that he or she seeks to expunge.

12

In sum, a fair reading of the statute would permit applications for expungement for those who have no convictions prior or subsequent to the judgment of conviction that they seek to expunge. That reading's foundation comes from the lack of clarity in the statutory language; the fact that Section 2(a) addresses the threshold for eligibility to seek the benefits that may be available under a remedial statute; the existence of many other safeguards within the statute to protect the public interest; and the absence from the statute's legislative history of any intent to alter the previous application given to the pre-amendment statute.

## II.

In my view, we need not adopt the rigid approach taken by the majority. It follows the path set down by the Appellate Division in In re Ross, 400 N.J. Super. 117, 122-24 (App. Div. 2008), but it is not a path that is compelled. In light of the serious consequences of not even allowing an individual to apply for expungement, and considering that the public interest is fully protected by the layers of review that can support denial of an expungement application, I would not deprive the individuals in either of these two appeals the opportunity to file their applications and to have their expungement applications addressed on their merits.

13

The majority strives to prove that theirs is the one true interpretation of Section 2(a). The point is that Section 2(a) is susceptible to more than one plausible construction, and, given the expungement statute's remedial purpose, a more generous reading is appropriate. In view of that remedial purpose, as well as the human consequences and disabilities affecting so many people resulting from a criminal conviction, I would read the statute liberally until the Legislature has spoken with sufficient clarity to deprive so many of their ability to re-enter society and enjoy productive lives.

I respectfully dissent.

SUPREME COURT OF NEW JERSEY

NO. ___A-84___          SEPTEMBER TERM 2013
NO. ___A-2___           SEPTEMBER TERM 2014

ON CERTIFICATION TO _____Appellate Division, Superior Court_____

IN THE MATTER OF THE
EXPUNGEMENT PETITION OF J.S.

_____

IN THE MATTER OF THE
EXPUNGEMENT OF THE
CRIMINAL RECORDS OF G.P.B.

DECIDED          August 10, 2015
_____
           Chief Justice Rabner          PRESIDING
_____
OPINION BY          Justice Patterson

CONCURRING/DISSENTING OPINIONS BY  _____

DISSENTING OPINION BY _____Justice LaVecchia_____

| CHECKLIST | AFFIRM | DISSENT |
|---|---|---|
| CHIEF JUSTICE RABNER | X | |
| JUSTICE LaVECCHIA | | X |
| JUSTICE ALBIN | | X |
| JUSTICE PATTERSON | X | |
| JUSTICE FERNANDEZ-VINA | X | |
| JUSTICE SOLOMON | X | |
| JUDGE CUFF (t/a) | X | |
| TOTALS | 5 | 2 |